LYNN GOLD *v.* GREENWICH HOSPITAL
ASSOCIATION ET AL.
(SC 16748)

Borden, Norcott, Katz, Vertefeuille and Zarella, Js.

---

Argued October 31—officially released December 31, 2002

*Lynn Gold,* pro se, the appellant (plaintiff).

*Richard A. O'Connor,* with whom, on the brief, was *Louis J. Dagostine,* for the appellees (defendants).

*Opinion*

VERTEFEUILLE, J. The pro se plaintiff, Lynn Gold, appeals from the judgment of the trial court rendered after granting the motion for summary judgment filed by the defendants, Greenwich Hospital Association and William Hunt. On appeal, the plaintiff claims that the

trial court incorrectly characterized her claim as one sounding in medical malpractice, so that expert testimony was required to establish the applicable standard of care pursuant to General Statutes § 52-184c (a).[1] We affirm the judgment of the trial court.[2]

The following undisputed facts and procedural history guide the resolution of this appeal. On an evening in January, 1994, the plaintiff went out to dinner with Raye Cooke,[3] a woman for whom the plaintiff had assumed a care-taking role. During the course of their dinner, Cooke had a violent allergic reaction. As a result, the plaintiff took Cooke to the emergency room of Greenwich Hospital (hospital), where Cooke was given two injections to alleviate her allergic reaction. Hunt, an emergency room physician, treated Cooke during her stay in the emergency room.

Once Cooke's allergic reaction had subsided, Hunt assured the plaintiff that Cooke likely would sleep through the night. Hunt then discharged Cooke and the plaintiff drove Cooke back to Cooke's home. The

[1] General Statutes § 52-184c (a) provides: "In any civil action to recover damages resulting from personal injury or wrongful death occurring on or after October 1, 1987, in which it is alleged that such injury or death resulted from the negligence of a health care provider, as defined in section 52-184b, the claimant shall have the burden of proving by the preponderance of the evidence that the alleged actions of the health care provider represented a breach of the prevailing professional standard of care for that health care provider. The prevailing professional standard of care for a given health care provider shall be that level of care, skill and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers."

[2] In their brief, the defendants assert that in the event that we reverse the trial court's rendering of summary judgment in their favor, we should consider their claim that the trial court improperly denied the defendants' previous motion for summary judgment, in which they asserted that they owed no duty to the plaintiff. Because we have determined that the trial court properly granted the defendants' subsequent motion for summary judgment on the grounds that expert testimony was required and unavailable, we do not reach this claim.

[3] Cooke is not a party in the present case.

plaintiff agreed to spend the night in order to take care of Cooke. Cooke was docile and tired when she arrived home, but awoke three times after going to bed.

When Cooke awoke for the third time, she asked the plaintiff about some notes that the plaintiff had been taking. The plaintiff did not disclose the nature of the notes. Cooke then assaulted, kicked and chased the plaintiff who fled from Cooke's home. During the course of her escape, the plaintiff slipped on ice in Cooke's driveway and exacerbated injuries that she had suffered during the attack. The plaintiff sustained injuries to her jaw, head and right side of her body as well as psychological trauma as a result of the alleged assault and subsequent fall.

The plaintiff subsequently initiated this action against the defendants alleging that "the hospital and [Hunt] knew or should have known that [Cooke] was a danger to others." Maintaining that the plaintiff's claim was one of medical malpractice, the defendants asserted that the plaintiff's failure to disclose the identity of an expert witness who would testify to the applicable standard of care would be fatal to the plaintiff's case pursuant to the requirements of § 52-184c (a).

Accordingly, in August, 1998, the plaintiff disclosed that Richard Lavely, a physician whom the plaintiff listed as being certified in emergency medicine, would testify as her expert regarding the standard of care. Shortly thereafter, citing the inordinate amount of time that it had taken to disclose any experts and the trial court's order that such disclosure be made by September, 1998, the defendants moved the trial court to preclude the plaintiff from disclosing any additional expert witnesses past the September deadline. The defendants' motion was granted.

The defendants then deposed Lavely and ascertained that Lavely did not have sufficient information available

to him to provide an opinion based on reasonable medical probability. Lavely indicated that in order to determine the applicable standard of care, he would require access to Cooke's medical files and Hunt's deposition statement, as well as sections of the hospital's emergency room regulations. None of these was available.[4]

The defendants subsequently moved to preclude the plaintiff's use of Lavely as an expert witness because Lavely would be unable to testify concerning the applicable standard of care to the requisite level of medical probability. The defendants' motion to preclude Lavely's testimony was granted.

The defendants then moved for summary judgment on the grounds that the plaintiff could not produce expert testimony against the defendants on the issue of the applicable standard of care, the alleged breach of that standard of care, and causation of the plaintiff's injury. The defendants argued that because the plaintiff effectively was precluded from offering any further expert testimony as a result of prior court orders, they were entitled to judgment as a matter of law. The trial court granted the defendants' motion for summary judgment and rendered judgment thereon in their favor. The plaintiff appealed from the judgment to the Appellate Court and we transferred the case to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

On appeal, the plaintiff claims that the trial court improperly rendered summary judgment because her claim is one of ordinary negligence, and not one of medical malpractice. The plaintiff asserts that the provi-

[4] Cooke's medical files were not available because she was not a party and had given no authorization for the release of those records. Hunt's deposition was not available because he had not been deposed prior to the deadline for the deposition of factual witnesses. The hospital's emergency room regulations were not available because they were subject to a protective order.

sion of § 52-184c requiring a plaintiff to establish a breach of the prevailing standard of care does not apply to her claim and hence no expert testimony is required. We disagree and conclude that the trial court properly determined that the plaintiff's claim sounds in medical malpractice and that expert testimony is required to establish the prevailing standard of care. Accordingly, we affirm the judgment of the trial court.

We begin by setting forth the applicable standard of review. "The standard of review of a trial court's decision granting summary judgment is well established. Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary." (Citations omitted; internal quotation marks omitted.) *LaFlamme* v. *Dallessio*, 261 Conn. 247, 250, 802 A.2d 63 (2002). On appeal, "we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court." *Zachs* v. *Groppo*, 207 Conn. 683, 689, 542 A.2d 1145 (1988).

The plaintiff in the present case does not dispute that there are no contested material facts for the purposes of the defendants' motion for summary judgment. Rather, she maintains that the trial court improperly applied medical malpractice law to her claim against

the defendants. We therefore must determine whether the trial court properly characterized the plaintiff's complaint as sounding in medical malpractice.

"The classification of a negligence claim as either medical malpractice or ordinary negligence requires a court to review closely the circumstances under which the alleged negligence occurred. [P]rofessional negligence or malpractice . . . [is] defined as the *failure of one rendering professional services* to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss, or damage to the recipient of those services." (Emphasis in original; internal quotation marks omitted.) *Trimel* v. *Lawrence & Memorial Hospital Rehabilitation Center*, 61 Conn. App. 353, 357–58, 764 A.2d 203, appeal dismissed, 258 Conn. 711, 784 A.2d 889 (2001); *Santopietro* v. *New Haven*, 239 Conn. 207, 226, 682 A.2d 106 (1996). "Furthermore, malpractice presupposes some *improper conduct in the treatment or operative skill* [or] . . . the failure to exercise requisite medical skill . . . . From those definitions, we conclude that the relevant considerations in determining whether a claim sounds in medical malpractice are whether (1) the defendants are sued in their capacities as medical professionals, (2) the alleged negligence is of a specialized medical nature that arises out of the medical professional-patient relationship, and (3) the alleged negligence is substantially related to medical diagnosis or treatment and involved the exercise of medical judgment." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Trimel* v. *Lawrence & Memorial Hospital Rehabilitation Center*, supra, 358. "[T]o prevail in a medical malpractice action, the plaintiff must prove (1) the requisite standard of care for treatment, (2) a deviation from that standard of care, and (3) a causal connection between the devia-

tion and the claimed injury. . . . Generally, expert testimony is required to establish both the standard of care to which the defendant is held and the breach of that standard." (Internal quotation marks omitted.) *Amsden* v. *Fischer*, 62 Conn. App. 323, 331, 771 A.2d 233 (2001).

We conclude that the trial court properly characterized the plaintiff's complaint as a medical malpractice claim. The hospital and Hunt were sued in their capacities as medical professionals. The defendants' alleged negligence is of a medical nature arising out of their medical treatment of Cooke. The alleged negligence is substantially related to medical diagnosis and involved the exercise of medical judgment. The plaintiff's claim, in essence, is that she was injured as a result of Cooke's treatment and discharge from the hospital when the defendants knew or should have known that Cooke was a danger to others. The claim implicates the defendants' medical judgment in discharging Cooke without ascertaining whether her psychological condition was such that she was a danger to others, e.g., the plaintiff.

Relying upon our decision in *Fraser* v. *United States*, 236 Conn. 625, 674 A.2d 811 (1996), the plaintiff maintains that the failure of a health care provider to warn a third party of the danger posed by a patient does not require expert testimony to establish the requisite standard of care and the breach of that standard.[5] The

---

[5] Briefly stated, the facts of *Fraser* are as follows. The plaintiff executrix, on behalf of her decedent's estate, brought an action against the United States, acting through the employees of the West Haven Veterans Administration Medical Center (medical center). *Fraser* v. *United States*, supra, 236 Conn. 626. The plaintiff alleged that the decedent's estate was entitled to damages because the medical center negligently had treated an outpatient, John Doe, with whom the decedent had "a longstanding, friendly relationship . . . ." Id., 628. Doe had been treated by the medical center for delusions and paranoia and was known to carry weapons. While suffering from these delusions, Doe stabbed and killed the decedent. The plaintiff claimed that the medical center's negligence resulted in the decedent's fatal stabbing. Id.

plaintiff interprets *Fraser* as standing for the proposition that the central issue in resolving a claim such as hers is one of the " 'duty owed' " and not one of the breach of any " 'standard of care.' " The plaintiff maintains that our statement in *Fraser* that a duty to warn does not apply in the case of an unidentifiable or unforeseeable victim, implies that such a duty necessarily inheres in the case of a victim such as herself who is "readily identifiable [or] within a foreseeable class of victims." Id., 630.[6] Accordingly, the plaintiff asserts, expert testimony is not required to establish a breach of the standard of care owed to her by the defendants. We disagree that *Fraser* controls this case.

The issue in *Fraser* was a question of law, namely, whether the defendant medical center owed a *duty* to unidentifiable third persons such as the plaintiff's decedent. The issues that the plaintiff must prove in the present case are *factual*. She must provide evidence of the requisite standard of care, the defendants' breach of that standard, and causation of her injury. In order to establish these *facts*, the plaintiff is required to present the testimony of an expert. "Except in the unusual case where the want of care or skill is so gross that it presents an almost conclusive inference of want of care . . . the testimony of an expert witness is necessary to establish both the standard of proper professional skill or care on the part of a physician . . . and that the defendant failed to conform to that standard of care." (Citations omitted; internal quotation marks omitted.) *Doe* v. *Yale University*, 252 Conn. 641, 687, 748 A.2d 834 (2000). As the trial court indicates in its

---

[6] In *Fraser* v. *United States*, supra, 236 Conn. 630–37, we discussed "identifiable victims" and a "foreseeable class of victims" in the context of the landmark case of *Tarasoff* v. *Regents of the University of California*, 17 Cal. 3d 425, 435, 551 P.2d 334, 131 Cal. Rptr. 14 (1976), in which the California Supreme Court held that a specific threat against a specific third person made to a psychotherapist who had a "special relationship" with his outpatient client created a duty to warn that third person.

memorandum of decision, even if the plaintiff had demonstrated that she was an identifiable victim or within a zone of danger, expert testimony would still be required to establish a breach of the standard of care. Because, as a result of previous rulings in the trial court, the plaintiff had been precluded from using any expert testimony at trial, she could not possibly prevail on her claim against the defendants. The trial court therefore properly granted the defendants' motion for summary judgment.

The judgment is affirmed.

In this opinion the other justices concurred.