### LOUIS F. JEFFERSON *v.* WAVENY CARE CENTER, INC., ET AL.*

Superior Court, Judicial District of Stamford-Norwalk
File No. CV-08-5007985-S

* Affirmed. *Jefferson* v. *Waveny Care Center, Inc.,* 134 Conn. App. 727, 39 A.3d 1239 (2012).

Memorandum filed December 21, 2010

*Proceedings*

*Michael C. McMinn*, for the plaintiff.

*Liam M. West*, for the named defendant et al.

*Gina M. Hall*, for the defendant Professional Health-care Services, LLC.

ADAMS, J.

I

BACKGROUND

The operative complaint, the plaintiff's Second Amended Complaint (Complaint), alleges that defendant Waveny Care Center, Inc., and affiliated companies (Waveny) operated a health care center in New Canaan, Connecticut, and contracted with defendant Professional Healthcare Services, LLC (Procare), for the latter to provide "staffing services for the position of Registered Nurse, Licensed Practical Nurse, Certified Nursing Assistant" during the time relevant to this case. Complaint, Count One, ¶ 6; Count Three, ¶ 12. The plaintiff, Louis F. Jefferson, was admitted to Waveny for rehabilitative care due to knee replacement surgery on January 23, 2007, and the defendants undertook to furnish care and treatment. Id., Count One, ¶ 8. In February, 2008, Jefferson developed multiple pressure sores on his feet alleged to be the result of "negligence" by the defendants in that the defendants failed to assess Jefferson as an at-risk patient, failed to use ordinary

care to prevent the development of the ulcers, violated state and federal regulations, and failed to act as a reasonable prudent person. Id., Count One, ¶¶ 10–11 (against Waveny); Count Three, ¶¶ 10–11 (against Procare). Also, it is alleged in late January, 2007, that Jefferson suffered a spread of Methicillin-resistant Staphylococcus Aureus (MRSA) as a result of the negligence of the defendants. Id., Count One, ¶ 12; Count Two, ¶¶ 10–11 (against Waveny); Count Three and Count Four, ¶ 19 (against Procare). Two counts of the Amended Complaint are directed at Waveny and Procare, respectively, one alleging negligence regarding the pressure ulcer, and one alleging negligence regarding the spread of MRSA. In all four counts, in the specifications of negligence, it is alleged that the defendants failed to act as "a reasonabl[y] prudent person."

Waveny moved to dismiss the initial complaint against it, which made similar allegations on the ground that Jefferson was alleging professional negligence or medical malpractice, but had failed to comply with the provisions of General Statutes § 52-190a requiring a certificate of good faith, and a written opinion by a similar health care provider. The Superior Court (*Hon. Kevin Tierney*, judge trial referee) denied the motion to dismiss on the ground that the issue of whether this case is an ordinary negligence case or a professional negligence case was "best fleshed out on a motion for summary judgment after discovery [was] done . . . . After we have discovery, then we may be revisiting this particular matter." Transcript, October 20, 2008, pp. 37–38. Judge Tierney subsequently granted a motion to reargue, but again denied the motion to dismiss. Order, January 5, 2009. (Docket Entry 108.00.) Subsequently, this court denied the defendant's motion to strike, which argued that noncompliance with § 52-190a made the complaint legally insufficient, stating that the Appellate Court had ruled that the proper means to raise a

§ 52-190a issue was by motion to dismiss. This court also stated it saw no reason to revisit Judge Tierney's decision, which explicitly left the matter subject to a motion for summary judgment. Memorandum of Decision, April 17, 2009. (Docket Entry 119.10.)

The defendants Waveny and Procare have each moved for summary judgment seeking dismissal of the two counts directed at them. The gist of each motion is that the plaintiff has not disclosed an expert and cannot prevail on a medical malpractice case without providing expert medical testimony. The plaintiff has filed an objection to both motions and both defendants have replied.

## II

## SCOPE OF REVIEW

Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) *Appleton* v. *Board of Education*, 254 Conn. 205, 209, 757 A.2d 1059 (2000). Summary judgment "is appropriate only if a fair and reasonable person could conclude only one way." *Miller* v. *United Technologies Corp.*, 233 Conn. 732, 751, 660 A.2d 810 (1985). "The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to judgment as a matter of law . . . ." (Citation omitted; internal quotation marks omitted.) *Appleton* v. *Board of Education*, supra, 209. "A material fact has been defined adequately and simply as a fact which will make a difference in the result of the case."

(Internal quotation marks omitted.) *United Oil Co.* v. *Urban Development Commission*, 158 Conn. 364, 379, 260 A.2d 596 (1969). The trial court, in the context of a summary judgment motion, may not decide issues of material fact, but only determine whether such genuine issues exist. *Nolan* v. *Borkowski*, 206 Conn. 495, 500, 538 A.2d 1031 (1988).

"Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact [question] . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue." (Internal quotation marks omitted.) *Maffucci* v. *Royal Park Ltd. Partnership*, 243 Conn. 552, 554, 707 A.2d 15 (1998). "[T]he party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Internal quotation marks omitted.) *Appleton* v. *Board of Education*, supra, 254 Conn. 209.

## III

## DISCUSSION

A. <u>Law of the case</u>. The plaintiff's first line of defense against summary judgment is that the issue of whether this is a medical malpractice case has been decided against the defendants three times, and should not be revisited because of the law of the case doctrine. Plaintiff's Opposition, pp. 5–7. The argument is substantively incorrect. There has been no decision in this case that the plaintiff's complaint is properly one of ordinary negligence. At best for the plaintiff, it has been held that it was premature, based on the pleadings alone, to determine whether this was an ordinary or professional negligence case, and that determination should be made

on a fuller factual record. The court finds there is no "law of the case" applicable to this proceeding, and therefore turns to the motions for summary judgment.

B. The motions for summary judgment. These motions are based on the premise that the plaintiff's case is a case of professional negligence—medical malpractice—and the fact that the plaintiff has not disclosed, indeed has specifically refused to disclose, an expert competent to render an opinion that the defendants committed malpractice even after being on notice of the defendants' position. It is clear that what the plaintiff labels his complaint is not dispositive of the actual nature of the action. *Votre* v. *County Obstetrics & Gynecology Group, P.C.*, 113 Conn. App. 569, 580, 966 A.2d 813, cert. denied, 292 Conn. 911, 973 A.2d 661 (2009). The Connecticut Supreme Court has specifically held that: "The classification of a negligence claim as either medical malpractice or ordinary negligence requires a court to review closely the circumstances under which the alleged negligence occurred. [P]rofessional negligence or malpractice . . . [is] defined as the *failure of one rendering professional services* to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss, or damage to the recipient of those services." (Emphasis in original; internal quotation marks omitted.) *Trimel* v. *Lawrence & Memorial Hospital Rehabilitation Center*, 61 Conn. App. 353, 357–58, 764 A.2d 203, appeal dismissed, 258 Conn. 711, 784 A.2d 889 (2001); *Santopietro* v. *New Haven*, 239 Conn. 207, 226, 682 A.2d 106 (1996). "Furthermore, malpractice presupposes some *improper conduct in the treatment or operative skill* [or] . . . the failure to exercise requisite medical skill . . . . From those definitions, we conclude that the relevant considerations in determining whether a claim sounds

in medical malpractice are whether (1) the defendants are sued in their capacities as medical professionals, (2) the alleged negligence is of a specialized medical nature that arises out of the medical professional-patient relationship, and (3) the alleged negligence is substantially related to medical diagnosis or treatment and involved the exercise of medical judgment." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Trimel* v. *Lawrence & Memorial Hospital Rehabilitation Center*, supra, 358. "[T]o prevail in a medical malpractice action, the plaintiff must prove (1) requisite standard of care for treatment, (2) a deviation from that standard of care, and (3) a causal connection between the deviation and the claimed injury." (Internal quotation marks omitted.) *Gold* v. *Greenwich Hospital Assn.*, 262 Conn. 248, 254–55, 811 A.2d 1266 (2002). An analysis of the three "relevant considerations" persuades this court that the action commenced by Jefferson and now prosecuted by his estate, must be classified as a medical malpractice case.

At the outset, there is no dispute between the parties that both defendants are sued in their capacities as medical professionals. Waveny is described as a health care provider and Procare is described as a provider of various types of licensed nurses in the complaint.

The parties do dispute whether the alleged negligence is of a specialized medical nature that arises out of a medical professional-patient relationship, and whether the alleged negligence was related to medical diagnosis or treatment and involved the exercise of medical judgment. In this regard the plaintiff essentially contends that Jefferson was admitted to Waveny and under the care of Procare's nurses for rehabilitation from knee surgery, and wound up "with injuries to his feet (i.e., pressure ulcers) and an infection (i.e., MRSA)" neither of which was related to the care for which he was

admitted. The plaintiff goes on to argue that the problems encountered at Waveny were the result of ordinary negligence, and that certain Connecticut Superior Court cases have distinguished between ordinary and medical negligence when the injuries do not result from the care for which the patient was admitted. As to the latter point, this court has read the Superior Court cases relied on by the plaintiff[1] and determines that they do not distinguish between ordinary and medical negligence on the basis claimed, and if they did, they would be in contravention of the controlling authority of *Gold* v. *Greenwich Hospital Assn.*, supra, 262 Conn. 248.

Furthermore, there is an absence of any evidentiary or legal basis for the plaintiff's assertions that the injuries resulted from something other than the care for which Jefferson entered Waveny to receive. On January 23, 2007, the day of his admission, Waveny assessed Jefferson as "[a]t risk for a pressure ulcer secondary to impaired bed mobility and pain of surgery" and the care plan called for initial skin assessment and weekly skin assessments. Def. Reply Memorandum, Exhibit B; Id., Exhibit P (affidavit of Elyse Dent), ¶ 7. As to MRSA, Waveny admission records and Greenwich Hospital records (where the knee surgery took place) show that Jefferson had colonized MRSA in his nares (nostril) but was asymptomatic. Id., Exhibits J, P at ¶ 8, and K. Because of this identification, the possibility of ulcers and the existence of MRSA were recognized at the outset by the defendants, and were part of his initial and overall care program.

---

[1] These cases are *Gordon-Cobb* v. *Hartford Hospital*, Superior Court, judicial district of Hartford, Docket No. CV-06-5006077 (March 20, 2007) (*Scholl, J.*) (43 Conn. L. Rptr. 100); *Bones* v. *New Britain General Hospital*, Superior Court, judicial district of New Britain, Docket No. CV-01-0508597 (March 26, 2002) (*Wiese, J.*) (31 Conn. L. Rptr. 613); and *Blais* v. *New England Center for Hearing Rehabilitation*, Superior Court, judicial district of Windham at Putnam, Docket No. CV-02-0067760 (March 13, 2003) (*Foley, J.*) (34 Conn. L. Rptr. 319).

Likewise, there is no basis for the plaintiff's assertion that the ulcers and spread of MRSA were the result of "ordinary negligence." This claim is founded on the affidavit of Catherine Snook, a Registered Nurse, submitted by the plaintiff. Plaintiff's Opposition, Exhibit B. Nurse Snook states, "Waveny . . . failed to use ordinary care to prevent the development of blisters and multiple pressure ulcers on [Jefferson's] feet such as removal of AE Hose . . .

\* \* \*

"failed to use ordinary care to prevent MRSA and the spread of MRSA . . .

\* \* \*

". . . Jefferson's injuries could have (sic) [been] prevented by using ordinary care." Id., Exhibit B, ¶¶ 10, 13, 14. This affidavit provides neither an evidentiary or legal basis for the plaintiff's contention, because it contains legal conclusions by a person not competent to testify to such a conclusion and ignores the fact that *Gold* establishes the proper analysis for reaching a conclusion as to what is medical negligence, and what is not. It should also be noted, as the defendants point out, that the AE hose referred to by Snook in her affidavit is an anti-embolism or compression stocking to prevent an embolism or blood clot in a person's leg. Def. Reply Memorandum, Exhibit L. In *Nielson* v. *D'Angelo*, 1 Conn. App. 239, 471 A.2d 965, cert. dismissed, 193 Conn. 801, 474 A.2d 1259 (1984), the Appellate Court found that the proper timing of removal of an AE hose was in a specialized field of knowledge where opinion evidence from a lay witness would be inadmissible. Id., 249.

As to the second consideration set forth in *Gold*, there is no real material fact in issue that the alleged negligence was of a specialized medical nature and arose out of a medical professional-patient relationship.

As noted above, the allegations of negligence arise from the prevention and treatment of pressure ulcers and the treatment of MRSA. There is no question these are medical conditions, and therefore the claims are of a specialized medical nature because they directly involve the plaintiff's medical condition. *Votre* v. *County Obstetrics & Gynecology Group, P.C.*, supra, 113 Conn. App. 577. Neither can there be any doubt a medical professional-patient relationship is involved because Jefferson was a patient at a licensed health care facility, and was cared for by licensed nurses. See Defendants' Motion for Summary Judgment, Exhibits H, ¶¶ 3, 7–9, I (involvement of nurses), H and K (involvement of registered nurse).

While the plaintiff makes arguments to the contrary, the evidence is quite overwhelming that the defendants' acts or omissions being sued upon in this case are substantially related to medical diagnosis or treatment, and involved the exercise of medical judgment. The defendants point out that certain individuals are more prone to develop pressure ulcers than others. Such persons are those with sensory or mobility limitations, who are malnourished or with peripheral vascular disease. Def. Motion, Exhibit L, ¶ 5. Connecticut health care facilities do not permit anyone other than a doctor or registered nurse to assess whether a patient is at risk to develop pressure ulcers. Id., ¶ 7. It is not appropriate to adjudicate the responsibility of determining whether Jefferson was "at risk" for pressure ulcers, or of determining what were the appropriate means to treat pressure ulcers under the standard of the ordinary reasonably prudent person. These kind of determinations have long been held under Connecticut law to involve the exercise of medical judgment and therefore are to be judged on the basis of professional standards. *Levett* v. *Etkind*, 158 Conn. 567, 573, 265 A.2d 70 (1969) (whether elderly patient needed help in disrobing

before a medical exam called for a medical judgment); *Consiglio* v. *Streeto*, Superior Court, judicial district of New Haven, Docket No. CV-06-5001967 (March 24, 2009) (*Lager, J.*) (47 Conn. L. Rptr. 387) (decision regarding patient's capacity to ambulate involved medical judgment).

Similarly, the identification and treatment of Jefferson's MRSA involved medical diagnosis and treatment. The defendants have produced evidence that individuals who are colonized with MRSA often have the MRSA bacterium on their body without showing any related symptoms. Def. Motion, Exhibit O, ¶ 6. Thus, the defendants had to exercise medical diagnosis to identify the presence of MRSA and medical judgment in the treatment of the infection.

Countering the defendants' evidence, the plaintiff submits an affidavit by a Registered Nurse that first states that Jefferson was not assessed as "at risk." Plaintiff's Opposition, Exhibit B, ¶ 11. This statement echos the plaintiff's allegations in paragraph 9 of Count One of the Amended Complaint—it is also at odds with Jefferson's records which clearly indicate the contrary. See Def. Reply, Exhibit B (showing Jefferson to be "at risk" for a pressure ulcer upon his January 23, 2007 admission to Waveny). Nurse Snook then goes on to aver the legal conclusion that Jefferson's injuries were the result of the defendants' lack of "ordinary care." Plaintiff's Opposition, Exhibit B, ¶¶ 10, 13, 14. This conclusion is admittedly based on Nurse Snook's "twenty-seven (27) years of experience" all of which has been spent as a Registered Nurse. It is difficult for this court to conceive that these conclusions are not based on her training as a medical professional. Thus, even the plaintiff is relying on the opinions of a medical professional, which he steadfastly argues he does not need in this case.

It is also worth noting that one of the allegations in the Amended Complaint is that the defendants' "violated"

certain "Federal" . . . regulations by failing to "prevent," Jefferson's pressure ulcers. Presumably, the plaintiff refers to a regulation issued by the United States Department of Health and Human Services, 42 C.F.R. § 483.25 (c), which states that long-term care facilities must ensure that a resident who enters the facility without pressure sores does not develop such sores "unless the individual's clinical condition demonstrates that they were unavoidable . . . ." The regulation emphasizes that the intent of the regulation is that a resident not develop pressure ulcers unless clinically unavoidable. The very fact that the regulation requires certain actions to be based on a patient's "clinical condition" presupposes that medical diagnosis and judgment are involved in determining whether the regulation was violated.

Based on the undisputed facts, and the discussion above, the court finds that consideration of the three factors set forth in *Gold* v. *Greenwich Hospital Assn.*, supra, 262 Conn. 248, leads conclusively to the determination that this case sounds in medical malpractice. In *Gold*, the Connecticut Supreme Court held that "[t]o prevail in a medical malpractice action, the plaintiff must prove (1) the requisite standard of care for treatment, (2) a deviation from that standard of care, and (3) a causal connection between the deviation and the claimed injury. . . . Generally, expert testimony is required to establish both the standard of care to which the defendant is held and breach of that standard.

* * *

"The issues that the plaintiff must prove . . . are *factual*. [The plaintiff] must provide evidence of the requisite standard of care, the defendants' breach of that standard, and the causation of [the plaintiff's] injury. In order to establish these *facts*, the plaintiff is

required to present the testimony of an expert." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id., 254–56.

In this case the plaintiff has consistently contended that no medical expert testimony was needed, and has consistently declined to disclose an expert witness pursuant to the provisions of Practice Book § 13-4. This declination by the plaintiff has occurred in the face of knowledge that the defendants, particularly the original defendant Waveny, have strongly contended from the outset that this case involves allegations of medical malpractice and despite the plaintiff having been given the opportunity to disclose an expert. Def. Motion, Exhibit E. In one sentence in his opposition memorandum, counsel for the plaintiff states that granting summary judgment on these motions would be very prejudicial because the statute of limitations for medical malpractice actions has passed. This, indeed may be very unfortunate; however, it does not alter the fact that the defendants have made the case for granting summary judgment.

## IV

## CONCLUSION

Because this is a medical malpractice case, and the plaintiff is required to prove essential elements of the case by means of expert testimony, and because the plaintiff has not disclosed any expert witness, the defendants' motions for summary judgment, which collectively seek dismissal of all counts of the complaint, are granted.