******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

LISA J. CEFARATTI *v.* JONATHAN S. ARANOW ET AL.
(SC 19444)

Rogers, C. J., and Palmer, Zarella, McDonald, Espinosa, Robinson and Vertefeuille, Js.

*Argued January 21—officially released June 14, 2016*

*Ellen M. Costello*, for the appellants (named defendant et al.).

*Kelly E. Reardon*, with whom, on the brief, was *Robert I. Reardon, Jr.*, for the appellee (plaintiff).

*Opinion*

ROGERS, C. J. The issue that we must resolve in this certified appeal is whether the plaintiff's medical malpractice action is barred by the statute of limitations or, instead, the statute of limitations was tolled under the continuing course of treatment doctrine. The plaintiff, Lisa J. Cefaratti, brought this action against the defendants, Jonathan S. Aranow, Shoreline Surgical Associates, P.C. (Shoreline), and Middlesex Hospital (Middlesex), alleging that Aranow had left a surgical sponge in the plaintiff's abdominal cavity during gastric bypass surgery. She further alleged that Middlesex was both directly liable for its own negligence and vicariously liable for Aranow's negligence, and Shoreline was vicariously liable for Aranow's negligence.[1] Thereafter, Middlesex filed a motion for summary judgment claiming, among other things, that the claims against it were barred by the applicable statute of limitations, General Statutes § 52-584.[2] Aranow and Shoreline subsequently filed a joint motion for summary judgment raising the same claim. The trial court concluded that the direct claims against Aranow and Middlesex were barred by the statute of limitations and, therefore, the derivative claims against Middlesex and Shoreline were also barred. Accordingly, the trial court rendered judgment for the defendants, and the plaintiff appealed to the Appellate Court, which reversed the judgment of the trial court on the ground that there was a genuine issue of material fact as to whether the statute of limitations had been tolled by the continuing course of treatment doctrine.[3] *Cefaratti* v. *Aranow*, 154 Conn. App. 1, 22, 105 A.3d 265 (2014). We then granted Aranow and Shoreline's petition for certification to appeal from that ruling, limited to the following issue: "Did the Appellate Court properly apply the 'continuing course of treatment' doctrine in determining what constitutes an 'identifiable medical condition' under that doctrine?"[4] *Cefaratti* v. *Aranow*, 315 Conn. 919, 919–20, 107 A.3d 960 (2015). We answer that question in the affirmative and, therefore, affirm the judgment of the Appellate Court.

The record, which we view in the light most favorable to the plaintiff for purposes of reviewing the trial court's rendering of summary judgment, reveals the following facts and procedural history. On December 8, 2003, after having diagnosed the plaintiff as being morbidly obese, Aranow performed gastric bypass surgery on the plaintiff at Middlesex. Thereafter, the plaintiff had follow-up appointments with Aranow on January 14, 2004, May 11, 2004, October 22, 2004, May 10, 2005, November 16, 2005, December 17, 2007 and March 20, 2009. The plaintiff testified at her deposition that, starting approximately one year after her surgery, she began to experience uncomfortable sensations in her abdomen. She described the sensations as follows: "When

[the sponge] was in there it was so large that I could barely bend over without it getting caught on my ribs and the pain was very, very intense. I felt like I was carrying a child in my abdomen." She further stated that she felt that "something was pushing out . . . and it felt like somebody was stabbing me . . . . [W]henever I had to have a bowel movement it felt like somebody was twisting something inside of me . . . ." The plaintiff testified that she described these sensations exactly to Aranow at every appointment, except perhaps the first two.[5]

On August 6, 2009, after being diagnosed with breast cancer by another physician, the plaintiff underwent a computerized tomography (CT) scan of her chest, abdomen and pelvis. The CT scan revealed the presence of foreign material in the plaintiff's abdominal cavity. On September 9, 2009, the plaintiff met with Aranow, who informed her that the object in her abdominal cavity was a surgical sponge. After the sponge was surgically removed, she no longer had the sensations of having something caught on her ribs and of carrying a child.[6]

On August 18, 2010, the plaintiff brought a medical malpractice action alleging that Aranow had negligently failed to remove the surgical sponge from her abdominal cavity during the gastric bypass surgery, and that Middlesex and Shoreline were both directly liable for their own negligence and vicariously liable for Aranow's negligence. Thereafter, Middlesex filed a motion for summary judgment claiming that, because the plaintiff had not brought the action within the three year statute of repose provided for in § 52-284,[7] the action was barred. The defendants filed a separate motion for summary judgment raising the same claim. The plaintiff opposed the motions, claiming, among other things, that the statute of limitations was tolled by the continuing course of treatment doctrine.

The trial court observed in its memorandum of decision that, to establish the elements of the continuing course of treatment doctrine, the plaintiff was required to prove: "(1) that . . . she had an identified medical condition that required ongoing treatment or monitoring; (2) that the defendant provided ongoing treatment or monitoring of that medical condition after the allegedly negligent conduct, or that the plaintiff reasonably could have anticipated that the defendant would do so; and (3) that the plaintiff brought the action within the appropriate statutory period after the date that treatment terminated." (Footnotes omitted.) *Grey* v. *Stamford Health System, Inc.*, 282 Conn. 745, 754–55, 924 A.2d 831 (2007). The trial court concluded that the identified medical condition at issue in the present case was the sponge in the plaintiff's abdomen and, because the plaintiff did not know about that condition, she could not have sought treatment for it. Accordingly, it

concluded that the doctrine did not apply and the action was, therefore, barred by the statute of limitations, entitling the defendants to summary judgment.

The plaintiff appealed from the judgment to the Appellate Court. The Appellate Court concluded that the plaintiff's morbid obesity was an identified medical condition for purposes of the continuing course of treatment doctrine and that there was a genuine issue of material fact as to whether Aranow had provided ongoing treatment for that condition. *Cefaratti* v. *Aranow*, supra, 154 Conn. App. 21–22. Accordingly, it concluded that there was a genuine issue of material fact as to whether the continuing course of treatment doctrine tolled the statute of limitations; id., 22; and reversed in part the judgment of the trial court. Id., 45.

This certified appeal followed. The defendants contend that the Appellate Court incorrectly determined that the plaintiff's morbid obesity was an identified medical condition for purposes of the continuing course of treatment doctrine. Rather, the defendants contend, the plaintiff's identified medical condition was either the retained surgical sponge, for which the plaintiff could not have sought treatment because she was unaware of it, or the plaintiff's morbid obesity, which was not an identified medical condition for purposes of the doctrine because it did not have any connection to the injury of which she complained. The plaintiff contends that she sought treatment *both* for her morbid obesity and for postoperative complications, such as her abdominal discomfort. Accordingly, she contends, her abdominal discomfort was an identified medical condition for purposes of the doctrine. In turn, the defendants respond that this claim fails because the plaintiff was required to and did not establish a connection between the medical condition for which she sought treatment—her abdominal discomfort—and the alleged negligence—leaving the sponge in the plaintiff's abdominal cavity. They further contend that, even if there is evidence that the sponge caused the plaintiff's abdominal discomfort, the plaintiff cannot prevail because she has not alleged or presented evidence that Aranow's continuing failure to diagnose the true cause of her discomfort was negligent.

We conclude that, to establish that there are genuine issues of material fact as to whether the continuing course of treatment doctrine tolled the statute of limitations, the plaintiff was required only to present evidence that her abdominal discomfort was caused by the sponge and that she sought continuing treatment for her discomfort from Aranow. We further conclude that the plaintiff has established that there is a genuine issue of material fact as to whether the doctrine applies.

"The standard of review of a trial court's decision granting summary judgment is well established. Practice Book § 17-49 provides that summary judgment shall

be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court." (Citation omitted; internal quotation marks omitted.) *Gold* v. *Greenwich Hospital Assn.*, 262 Conn. 248, 253, 811 A.2d 1266 (2002).

"[I]n the context of a motion for summary judgment based on a statute of limitations special defense, a defendant typically meets its initial burden of showing the absence of a genuine issue of material fact by demonstrating that the action had commenced outside of the statutory limitation period. . . . When the plaintiff asserts that the limitations period has been tolled by an equitable exception to the statute of limitations, the burden normally shifts to the plaintiff to establish a disputed issue of material fact in avoidance of the statute." (Citation omitted.) *Romprey* v. *Safeco Ins. Co. of America*, 310 Conn. 304, 321, 77 A.3d 726 (2013). Thus, in the present case, because there is no dispute that the plaintiff filed her complaint after the limitations period set forth in § 52-584 had expired, the burden is on the plaintiff to establish that there is a genuine issue of material fact as to whether the statute of limitations was tolled by the continuing course of treatment doctrine.

We begin our analysis with a review of our case law involving the continuing course of treatment doctrine. "As a general rule, [t]he [s]tatute of [l]imitations begins to run when the breach of duty occurs." (Internal quotation marks omitted.) *Grey* v. *Stamford Health System, Inc.*, supra, 282 Conn. 751. "We have . . . recognized, however, that the statute of limitations, in the proper circumstances, may be tolled under the continuous treatment . . . doctrine, thereby allowing a plaintiff to commence his or her lawsuit at a later date." (Internal quotation marks omitted.) Id. Under that doctrine, "[s]o long as the relation of physician and patient continues as to the particular injury or malady which [the physician] is employed to cure, and the physician continues to attend and examine the patient in relation thereto, and there is something more to be done by the physician in order to effect a cure, it cannot be said that the treatment has ceased." (Internal quotation marks omit-

ted.) Id.

As we have indicated, to establish the elements of the continuing course of treatment doctrine, a plaintiff is required to prove: "(1) that he or she had an identified medical condition that required ongoing treatment or monitoring; (2) that the defendant provided ongoing treatment or monitoring of that medical condition after the allegedly negligent conduct, or that the plaintiff reasonably could have anticipated that the defendant would do so; and (3) that the plaintiff brought the action within the appropriate statutory period after the date that treatment terminated." (Footnotes omitted.) Id., 754–55. To constitute an "identified medical condition" for purposes of the doctrine, the medical condition for which the plaintiff received ongoing treatment must be connected to the injury of which the plaintiff complains. See id., 754 n.6, citing *Watkins* v. *Fromm*, 108 App. Div. 2d 233, 244, 488 N.Y.S.2d 768 (1985) ("continuous treatment doctrine applies only to treatment for the same or related illnesses or injuries, continuing after the alleged acts of malpractice, not mere continuity of a general physician-patient relationship" [internal quotation marks omitted]); *Miccio* v. *Gerdis*, 120 App. Div. 3d 639, 640, 990 N.Y.S.2d 863 (2014) (doctrine applies "where [the physician] treated the patient continuously over the relevant time period for symptoms that are ultimately traced to [the underlying] condition [of which the plaintiff complains]").

With these principles in mind, we turn to the evidence in the present case. The plaintiff testified that, starting approximately one year after the surgery, she developed severe abdominal discomfort. She further testified that she complained to Aranow of this discomfort at each of the subsequent follow-up appointments. Finally, she testified that, after the surgical sponge was removed, a number of symptoms disappeared.[8] On the basis of this evidence, we conclude that there are genuine issues of material fact as to: (1) whether the plaintiff's abdominal discomfort was caused by the presence of the surgical sponge and, therefore, whether it was an "identified medical condition" for purposes of the continuing course of treatment doctrine; and (2) whether the plaintiff sought continuing treatment for that medical condition. Accordingly, we conclude that the Appellate Court properly determined that there are genuine issues of material fact as to whether the continuing course of treatment doctrine tolled the statute of limitations.

The defendants contend, however, that the doctrine does not apply because the plaintiff has not alleged that Aranow's treatment of her *after* the surgery was negligent.[9] Specifically, they contend that she has not alleged that Aranow negligently failed to discover during the follow-up appointments that a surgical sponge had been left in her abdominal cavity during the surgery. Thus, the defendants implicitly contend that we should

adopt the "single act" exception to the continuing course of treatment doctrine, under which the doctrine does not apply when the plaintiff's injury was caused by a single act of negligence rather than by a continuous course of negligent treatment. See *Pastchol* v. *St. Paul Fire & Marine Ins. Co.*, 326 Ark. 140, 146, 929 S.W.2d 713 (1996) ("the continuous treatment doctrine becomes relevant *when the medical negligence consists of a series of negligent acts or, a continuing course of improper treatment*" [emphasis in original; internal quotation marks omitted]); *Langner* v. *Simpson*, 533 N.W.2d 511, 522 (Iowa 1995) ("[t]o prevail under the continuum of negligent treatment doctrine, the plaintiff must show [1] that there was a continuous and unbroken course of negligent treatment, and [2] that the treatment was so related as to constitute one continuing wrong" [internal quotation marks omitted]); *Swang* v. *Hauser*, 288 Minn. 306, 309, 180 N.W.2d 187 (1970) (doctrine does not apply when alleged tort was single act and no continued course of treatment could cure or relieve it).

We disagree. Our cases have consistently stated that the policy underlying the continuous treatment doctrine seeks to "[maintain] the physician/patient relationship in the belief that the most efficacious medical care will be obtained when the attending physician remains on a case from onset to cure." (Internal quotation marks omitted.) *Grey* v. *Stamford Health System, Inc.*, supra, 282 Conn. 752; *Blanchette* v. *Barrett*, 229 Conn. 256, 276, 640 A.2d 74 (1994); *Connell* v. *Colwell*, 214 Conn. 242, 253, 571 A.2d 116 (1990) (same); see also *Grey* v. *Stamford Health System, Inc.*, supra, 752 ("[t]he doctrine rests on the premise that it is in the patient's best interest that an ongoing course of treatment be continued, rather than interrupted by a lawsuit because the doctor not only is in a position to identify and correct his or her malpractice, but is best placed to do so" [internal quotation marks omitted]), quoting *Nykorchuck* v. *Henriques*, 78 N.Y.2d 255, 258, 577 N.E.2d 1026, 573 N.Y.S.2d 434 (1991); *Grey* v. *Stamford Health System, Inc.*, supra, 752 (policy underlying doctrine is to avoid creating "a dilemma for the patient, who must choose between silently accepting continued corrective treatment from the offending physician, with the risk that his claim will be time-barred or promptly instituting an action, with the risk that the physician-patient relationship will be destroyed" [internal quotation marks omitted]), quoting *Rizk* v. *Cohen*, 73 N.Y.2d 98, 104, 535 N.E.2d 282, 538 N.Y.S.2d 229 (1989). In addition, we have repeatedly recognized that, "[s]o long as the relation of physician and patient continues as to the particular injury or malady which [the physician] is employed to cure, and the physician continues to attend and examine the patient in relation thereto, and there is something more to be done by the physician in order to effect a cure, it cannot be said that the treatment has ceased."

(Internal quotation marks omitted.) *Grey* v. *Stamford Health System, Inc.*, supra, 751; *Blanchette* v. *Barrett*, supra, 274 (same); see also *Giambozi* v. *Peters*, 127 Conn. 380, 385, 16 A.2d 833 (1940) ("when . . . injurious consequences arise from course of treatment, the statute [of limitations] does not begin to run until the treatment is terminated"), overruled in part on other grounds by *Foran* v. *Carangelo*, 153 Conn. 356, 360, 216 A.2d 638 (1966). Thus, to require that the continuing treatment itself must be negligent before the doctrine can be applied would be fundamentally inconsistent with one of the primary policies underlying the doctrine, namely, to allow the patient to seek ongoing treatment for a medical condition caused by a single act of negligence.[10] Accordingly, we decline to adopt this exception. See *Nobles* v. *Memorial Hospital of Laramie County*, 301 P.3d 517, 527–29 (Wyo. 2013) (rejecting single act exception to continuing course of treatment doctrine because exception is "at odds with the basic policies at the heart of the continuous treatment rule").[11]

The defendants also contend that, even if evidence of continuing negligence is not required, the continuing course of treatment doctrine does not apply here because "the plaintiff certainly could not have anticipated [that] the defendant would have treated her for a retained foreign object of which no one was aware." See *Grey* v. *Stamford Health System, Inc.*, supra, 282 Conn. 755–56 ("when the plaintiff had no knowledge of a medical condition and, therefore, had no reason to expect ongoing treatment for it from the defendant, there is no reason to apply the doctrine"). Thus, the defendants contend that a plaintiff should be required to prove that the medical condition for which continuing treatment was sought was "identified" in the sense that the plaintiff knew its true nature and cause. We disagree. Rather, we conclude that the medical condition must be "identified" in the sense that it was the specific condition that either gave rise to or was caused by the defendant's negligence. See *McDermott* v. *Torre*, 56 N.Y.2d 399, 406, 437 N.E.2d 1108, 452 N.Y.S.2d 351 (1982) ("Included within the scope of continuous treatment is a timely return visit instigated by the patient to complain about and seek treatment for a matter related to the initial treatment. Thus, there will be continuing treatment when a patient, instructed that he or she does not need further attention, soon returns to the doctor because of continued pain in that area for which medical attention was first sought." [Internal quotation marks omitted.]);[12] *Miccio* v. *Gerdis*, supra, 120 App. Div. 3d 640 ("a physician . . . cannot defeat the application of the continuous treatment doctrine merely because of a failure to make a correct diagnosis as to the underlying condition, where [the physician] treated the patient continuously over the relevant time period for symptoms that are ultimately traced to that

condition"); D. Peck, "The Continuous Treatment Doctrine: A Toll on the Statute of Limitations for Medical Malpractice in New York," 49 Alb. L. Rev. 64, 77 (1984) ("Although the [defendant] may be aware that its actions caused the injury which necessitated the subsequent treatment, this knowledge is not a necessary element of affirmative treatment. The essential factor is that the subsequent treatment is related to the act or omission which gave rise to the cause of action." [Footnote omitted.]). This conclusion "is compelled by the policy underlying the continuous treatment doctrine, i.e., that a patient should not be required to interrupt corrective medical treatment by a physician and undermine the trust in the physician-patient relationship in order to ensure a timely claim . . . ." (Citation omitted.) *Couch* v. *Suffolk*, 296 App. Div. 2d 194, 197, 746 N.Y.S.2d 187 (2002). "Although it seems incongruous that subsequent treatment can occur without affirmative action by the physician since the term treatment connotes the presence of action, in certain situations treatment can occur by omission. This treatment by omission arises when the patient returns to the treating physician complaining of problems in the mistreated area but the physician disregards the complaints. The significant factor is that even though the physician may not have provided literal treatment to the afflicted area, the patient, by returning to the physician, has provided him with an opportunity to correct his previous error." (Footnote omitted; internal quotation marks omitted.) D. Peck, supra, 79. Thus, in the present case, the plaintiff was required only to show that there is a genuine issue of material fact as to whether her symptoms of abdominal discomfort were connected to the retained surgical sponge and that she sought treatment for those symptoms, not that she knew about and sought treatment for the presence of the sponge.[13]

Accordingly, we conclude this court's statement in *Grey* v. *Stamford Health System, Inc.*, supra, 282 Conn. 755–56, that "when the plaintiff had no knowledge of a medical condition and, therefore, had no reason to expect ongoing treatment for it from the defendant, there is no reason to apply the doctrine" refers either to the situation in which the plaintiff was suffering from an *asymptomatic* medical condition and, therefore, had no reason to seek treatment for it, or to the situation in which the plaintiff sought treatment for certain symptoms, the defendant determined that the symptoms required no further treatment and the plaintiff sought no further treatment. It does not refer to the situation in which a plaintiff continually sought treatment for symptoms related to the act of negligence for which the true cause was unknown.[14]

To the extent that the defendants contend that routine appointments can never constitute a continuing course of treatment for purposes of the doctrine, we again disagree. Rather, we conclude that routine post-

operative appointments for the purpose of tracking the progress of the plaintiff's condition and postoperative complications, if any, constitute continuing treatment for any identified medical condition that was caused by the surgery. See *Miller* v. *Rivard*, 180 App. Div. 2d 331, 339, 585 N.Y.S.2d 523 (1992) (routine postoperative procedures are part of same course of treatment as surgery); *Callahan* v. *Rogers*, 89 N.C. App. 250, 255, 365 S.E.2d 717 (1988) (it is irrelevant for purposes of doctrine whether postoperative appointments were initiated by plaintiff or were scheduled office visits). Of course, as with any application of the doctrine, the plaintiff must present evidence in such cases that he or she sought treatment for a specific medical condition that was related to the injury of which he or she complained. For example, in the present case, if the plaintiff had failed to present any evidence that the presence of the sponge in her abdominal cavity had caused symptoms for which she sought treatment at the follow-up appointments, the mere fact that the defendants provided ongoing monitoring of the condition that the surgery was intended to cure—the plaintiff's morbid obesity—would not have been sufficient.

For the foregoing reasons, we conclude that the Appellate Court properly determined that there are genuine issues of material fact as to whether the continuing course of treatment doctrine tolled the statute of limitations. Accordingly, we affirm the judgment of the Appellate Court reversing the judgment of the trial court that the plaintiff's action was barred by the statute of limitations.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

[1] The relevant complaint has four counts. The first count is against "Jonathan S. Aranow, M.D. of . . . Shoreline . . . ." The second count is against Middlesex. The third count is against "Middlesex . . . and Aranow . . . [respondeat] [s]uperior." The fourth count is against Shoreline. Both the first and the fourth count allege that Aranow is Shoreline's employee but, unlike the third count, they do not expressly allege that Shoreline is vicariously liable for Aranow's negligence under the doctrine of respondeat superior. Because the trial court apparently assumed that that was the case, and the defendants do not contend otherwise, we also make that assumption.

[2] Middlesex also claimed that the plaintiff did not have a viable claim of vicarious liability against it because Aranow was not its actual agent or employee and the doctrine of apparent agency is not recognized in tort actions in this state. The trial court agreed with Middlesex and granted its motion for summary judgment on the vicarious liability claim. The plaintiff appealed to the Appellate Court, which affirmed the judgment of the trial court. *Cefaratti* v. *Aranow*, 154 Conn. App. 1, 45, 105 A.3d 265 (2014). We then granted the plaintiff's petition for certification to appeal on the following issue: "Did the Appellate Court properly conclude that the doctrine of apparent authority does not apply to actions sounding in tort?" *Cefaratti* v. *Aranow*, 315 Conn. 919, 107 A.3d 960 (2015). In the companion case of *Cefaratti* v. *Aranow*, 321 Conn.    ,     A.3d     (2016), issued on the same date as this opinion, we answer that question in the negative and conclude that the case must be remanded so that the plaintiff may have an opportunity to present evidence sufficient to create a genuine issue of material fact under our newly adopted standard for establishing apparent agency in a tort action.

[3] The plaintiff has not claimed on appeal to the Appellate Court or to this court that the continuing course of treatment doctrine tolls the statute of limitations with respect to her claim that Middlesex is directly liable for its

own negligence. Accordingly, the trial court's summary judgment rendered in favor of Middlesex on that count still stands. See *Cefaratti* v. *Aranow*, supra, 154 Conn. App. 6 n.3 ("Count two of the complaint is not at issue in this appeal. . . . Any possible negligence on the part of [Middlesex] is not at issue on appeal."). To the extent that the plaintiff claims that Shoreline is directly liable for its own negligence before and during the surgery, any such claim is also barred for the same reason.

[4] As we have explained, the only remaining claim against Middlesex is that it is vicariously liable for Aranow's negligence. See footnote 3 of this opinion. Middlesex did not join in the present appeal, presumably because the derivative claim against it would be barred if this court were to agree with Aranow and Shoreline that the claim against Aranow is barred. For convenience, we hereinafter refer to Aranow and Shoreline as the defendants.

[5] The plaintiff filled out a questionnaire at each of the follow-up appointments that specifically asked whether she was suffering from abdominal pain. She indicated that she had abdominal pain only on the questionnaire for the November 16, 2005 appointment. The plaintiff explained at her deposition that she did not indicate that she had abdominal pain on the other questionnaires because she "didn't consider it at that time to be abdominal pain, and the way I described [it] to [Aranow] was different than what I would describe [as] abdominal pain."

[6] Although it is not absolutely clear, the plaintiff's deposition testimony strongly implies that she underwent surgery to have the surgical sponge removed. Specifically, she stated that "[w]hen the sponge was in there" she had a specific type of discomfort, and that she had not had that type of discomfort "[s]ince the surgery . . . ." The plaintiff's attorney confirmed at oral argument before this court that the sponge was surgically removed two years after it was discovered.

[7] General Statutes § 52-584 provides: "No action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct, or by malpractice of a physician, surgeon, dentist, podiatrist, chiropractor, hospital or sanatorium, shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of, except that a counterclaim may be interposed in any such action any time before the pleadings in such action are finally closed."

[8] Accordingly, we reject the defendants' contention that "[t]here was not one scintilla of evidence in this case that the alleged abdominal pain was ultimately traced to the retained sponge." There is sufficient evidence to create an issue of fact as to whether the sponge caused the discomfort given that some of the discomfort disappeared after the sponge was removed. *Sherman* v. *Bristol Hospital, Inc.*, 79 Conn. App. 78, 89, 828 A.2d 1260 (2003) ("An exception to the general rule with regard to expert medical opinion evidence is when the medical condition is obvious or common in everyday life. . . . Similarly, expert opinion may not be necessary as to causation of an injury or illness if the plaintiff's evidence creates a probability so strong that a lay jury can form a reasonable belief." [Citations omitted; internal quotation marks omitted.]).

[9] Although we conclude in this opinion that it is not necessary for a plaintiff to prove that there must be a continuing failure to diagnose in order for the doctrine to apply, in her opposition to the defendants' motion for summary judgment, we note that the plaintiff contended that the defendants "continually breached their duty from 2003 to 2009 by failing to properly examine and follow up with the [p]laintiff to determine that a surgical sponge had been left behind." In other words, the plaintiff contended that the defendants' failure to diagnose the true nature of her condition constituted continuing negligence. The only evidence that the plaintiff cited to support this claim, however, was Aranow's deposition testimony that a sponge had been left in the abdominal cavity of a former patient and that he had discovered the sponge several years after the surgery when he ordered a CT scan. We conclude that this evidence is not sufficient to raise a genuine issue of material fact as to whether Aranow breached the governing standard of care when he failed to diagnose the plaintiff's true condition when she complained of abdominal discomfort after the appeal. Rather, the plaintiff was required to present expert testimony as to whether Aranow breached the standard of care. See *Doe* v. *Yale University*, 252 Conn. 641, 687, 748 A.2d 834 (2000) ("[e]xcept in the unusual case where the want of care or

skill is so gross that it presents an almost conclusive inference of want of care . . . the testimony of an expert witness is necessary to establish both the standard of proper professional skill or care on the part of a physician" [citation omitted]); *Sullivan* v. *Yale-New Haven Hospital, Inc.*, 64 Conn. App. 750, 767, 785 A.2d 588 (2001) ("[b]ecause it was evident that the substitute plaintiff did not produce an expert witness who would have testified that the defendants had breached the standard of care in their treatment of the plaintiff, the court properly found that the defendants were entitled to judgment as a matter of law").

[10] We recognize that our cases previously have contrasted situations in which the alleged medical malpractice was " 'a single act of a physician or surgeon' " with situations involving a " 'course of treatment.' " *Blanchette* v. *Barrett*, supra, 229 Conn. 274, quoting *Giambozi* v. *Peters*, supra, 127 Conn. 385. These cases also may be interpreted as suggesting that the continuing course of treatment doctrine does not apply when the only malpractice was the initial single act of negligence. *Blanchette* v. *Barrett*, supra, 274 (when malpractice was single act, "[t]he [s]tatute of [l]imitations begins to run when the breach of duty occurs"); *Giambozi* v. *Peters*, supra, 385 (same); *Giambozi* v. *Peters*, supra, 384 ("where the injury was inflicted at the time of the operation and not occasioned by subsequent treatment or neglect, and there has been no fraudulent concealment by the surgeon, the period of limitation for actions of this kind commences from the date of the wrongful act or omission"). In *Giambozi* v. *Peters*, supra, 385, however, there was no treatment at all after the initial act of negligence. *Blanchette* also does not definitively answer the question of whether the doctrine applies in the absence of ongoing negligence because the court in that case found both that the defendant had a continuing duty to the plaintiff after the initial act of negligence and that the defendant provided continually negligent treatment. See *Blanchette* v. *Barrett*, supra, 279. Moreover, since *Giambozi* was decided, this court has recognized that, in *addition* to allowing a plaintiff to use the last date of the defendant's negligent conduct as the date that the negligence occurred, "[t]he policy underlying the continuous treatment doctrine [also] seeks to maintain the physician/patient relationship in the belief that the most efficacious medical care will be obtained when the attending physician remains on a case from onset to cure." (Internal quotation marks omitted.) *Connell* v. *Colwell*, supra, 214 Conn. 253. In light of the strong policy in favor of allowing the plaintiff to seek treatment for the negligently inflicted injury, we conclude that our suggestions in *Giambozi* and *Blanchette* that, when "[t]he term malpractice . . . [is] applied to a single act of a physician or surgeon . . . [t]he [s]tatute of [l]imitation[s] begins to run when the breach of duty occurs"; [internal quotation marks omitted] *Blanchette* v. *Barrett*, supra, 274, quoting *Giambozi* v. *Peters*, supra, 385; were intended to apply to cases in which there has been *no* continuing course of treatment for an identified medical condition, negligent or otherwise.

[11] See also *Gomez* v. *Katz*, 61 App. Div. 3d 108, 109–17, 874 N.Y.S.2d 161 (2009) (doctrine applied when defendant caused injury during allegedly negligent eye surgery); *Jauregui* v. *Memorial Hospital of Sweetwater County*, 111 P.3d 914, 915, 918–19 (Wyo. 2005) (doctrine applied when defendant left sponge in plaintiff's shoulder during surgery), overruled on other grounds by *Harmon* v. *Star Valley Medical Center*, 331 P.3d 1174, 1184 and n.9 (Wyo. 2014).

[12] In *McDermott* v. *Torre*, supra, 56 N.Y.2d 403, the plaintiff consulted the defendant dermatologist and requested that he examine a mole on her ankle. The defendant conducted tests and concluded that the mole did not require any treatment. Id., 404. The plaintiff then received continued treatment for other ailments with the defendant, but received no further treatment for the mole. Id. She continued to complain, however, about pain and discoloration in her ankle. It was ultimately determined that the mole was cancerous. Id. The plaintiff brought an action against the defendant after the limitations period had expired, claiming that the continuing course of treatment doctrine applied. Id., 404–405. The Court of Appeals of New York concluded that the fact that the defendant had continually misdiagnosed the plaintiff's condition as benign was irrelevant for purposes of the doctrine. Id., 406. Rather, the court concluded, the dispositive question was whether the "plaintiff's concern about her ankle was one of the purposes for her subsequent visits" to the defendant. Id. Thus, the plaintiff was not required to prove either ongoing negligence or that the plaintiff and the defendant were aware of the true nature of the plaintiff's condition in order to invoke the doctrine.

[13] The defendants contend that "[t]he trial court made a finding of fact

that the retained sponge was the identified medical condition," not the plaintiff's abdominal discomfort, and that we must defer to this finding. Trial courts do not make findings of fact, however, in ruling on motions for summary judgment. Rather, viewing the evidence in the light most favorable to the nonmoving party, they determine whether there are genuine issues of material fact, which is a question of law. Because this court is in as good a position as the trial court to make this determination, our review is plenary. *Gold* v. *Greenwich Hospital Assn.*, supra, 262 Conn. 253.

[14] To support its conclusion that the continuing course of treatment doctrine does not apply in the present case, the trial court relied on our statement in *Martinelli* v. *Fusi*, 290 Conn. 347, 364, 963 A.2d 640 (2009), that, although evidence that the defendant was unaware of the true nature of the plaintiff's condition may indicate that the defendant was negligent, "it does not indicate that the defendant was actually aware that the plaintiff's condition required further treatment, such that an ongoing duty to diagnose and treat that condition could be imposed." That principle, however, relates to the continuing course of *conduct* doctrine, which is distinct from the continuing course of treatment doctrine. See id., 357, 365–66 (analyzing doctrines separately); *Grey* v. *Stamford Health System, Inc.*, supra, 282 Conn. 755 ("the primary difference between the doctrines is that the [continuing course of treatment doctrine] focuses on the *plaintiff's* reasonable expectation that the treatment for an existing condition will be ongoing, while the [continuing course of conduct doctrine] focuses on the *defendant's* duty to the plaintiff arising from his knowledge of the plaintiff's condition" [emphasis in original]).

———————————————————