## LOOMIS AMSDEN *v.* RICHARD FISCHER
### (AC 19452)

Schaller, Zarella and Peters, Js.

Argued June 6, 2000—officially released March 20, 2001

*Karen K. Clark,* with whom, on the brief, was *Maria S. Spalding,* for the appellant (defendant).

*Neil Johnson,* for the appellee (plaintiff).

*Opinion*

SCHALLER, J. The defendant, Richard Fischer, appeals from the judgment of the trial court in favor of the plaintiff, Loomis Amsden, rendered after a jury trial in this medical malpractice action. The defendant claims on appeal that the court improperly (1) excluded the testimony of his expert witness on the issue of causation, (2) refused to instruct the jury on intervening cause and (3) failed to direct a verdict in his favor or to set aside the jury's verdict for the plaintiff. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our disposition of this appeal. This action arose out of a surgical procedure that the defendant performed on the plaintiff to alleviate carpal tunnel entrapment on March 2, 1993. The plaintiff claimed that as a result of the procedure, he suffered median nerve damage in his right hand, resulting in permanent disability.

After postoperative treatment with the defendant, the plaintiff consulted Duffield Ashmead on November 23, 1993. Ashmead is a physician who specializes in reconstructive surgery and microsurgery. His examination of the plaintiff's symptoms, which included diminished sensation in the fingers and virtually no sensation in the thumb, led him to conclude that the plaintiff's median nerve had been damaged during his earlier carpal tunnel release surgery. Ashmead performed two separate reconstructive surgeries on the plaintiff's median nerve, which involved use of the plaintiff's healthy nerve to bridge a gap in the damaged median nerve. Ashmead rated the plaintiff's condition as 44 percent permanently impaired.

At trial, the plaintiff offered the testimony of his expert witness, Gerald Sava, a surgeon who performed

no more than six carpal tunnel surgeries per year. Sava had difficulty discerning from the defendant's surgical notes what the defendant had done. He testified that the numbness in the plaintiff's fingers and thumb indicated median nerve damage, and was not a risk associated with carpal tunnel release surgery. Sava further testified that the defendant breached the standard of care because an "injury with consequent significant deficit is an unacceptable consequence of surgery."

The defendant offered the testimony of his expert witness, Richard Eaton, a physician who testified that the nerves appeared to be regenerating and showing signs of improvement following the defendant's surgical procedure. Eaton stated that nerve damage is a risk of the surgery and that the defendant complied with good medical standards in caring for the plaintiff. Eaton concluded that the plaintiff's condition was not the result of the defendant's surgery and agreed with the defendant's approach.

On January 22, 1999, the plaintiff filed a motion in limine to exclude a portion of Eaton's testimony in which he stated that the plaintiff's injuries were the result of Ashmead's subsequent surgical procedures. The plaintiff asserted that the testimony was inadmissible because the defendant had not filed a special defense alleging a superseding cause of the injuries and that under the defendant's general denial, the admission of the testimony would serve only to confuse the jury. The court granted the motion. Additional facts and procedural history will be set forth as necessary.

I

The defendant claims first that the court improperly excluded the testimony of his expert witness on the issue of causation. We disagree.

"The decision to preclude a party from introducing expert testimony is within the discretion of the trial

court. *Sturdivant* v. *Yale-New Haven Hospital*, [2 Conn. App. 103, 107, 476 A.2d 1074 (1984)]. On appeal, that decision is subject only to the test of abuse of discretion. *Kemp* v. *Ellington Purchasing Corporation*, 9 Conn. App. 400, 405, 519 A.2d 95 (1986). The salient inquiry is whether the court could have reasonably concluded as it did. *Sturdivant* v. *Yale-New Haven Hospital*, supra, 108." *Yale University School of Medicine* v. *McCarthy*, 26 Conn. App. 497, 500–501, 602 A.2d 1040 (1992).

The defendant argues that the testimony of his expert was admissible to establish a set of facts inconsistent with the plaintiff's claim that he proximately caused the plaintiff's injuries. The trial court refused to admit the portion of Eaton's testimony that purported to establish that the plaintiff's condition had improved through the physical therapy regimen under the defendant, but declined following the surgical procedures performed by Ashmead.

The defendant asserts that the argument is appropriately framed as the trial court's failure to admit evidence tending to negate proof of causation under the standard set forth in *Pawlinski* v. *Allstate Ins. Co.*, 165 Conn. 1, 327 A.2d 583 (1973),[1] rather than the application of the well-established rule that a negligent actor is responsible for all the foreseeable consequences of his negligence. See *Wasfi* v. *Chaddha*, 218 Conn. 200, 216, 588

---

[1] "The distinction between matters which may be proved under a general denial and matters constituting special defenses, which must be specially pleaded, was enunciated in *Pawlinski* v. *Allstate Ins. Co.*, [supra, 165 Conn. 1], where [the Supreme Court] observed . . . that '[t]he issues to be tried may be framed in several ways. A denial of a material fact places in dispute the existence of that fact. Even under a denial, a party generally may introduce affirmative evidence tending to establish a set of facts inconsistent with the existence of the disputed fact. . . . If, however, a party seeks the admission of evidence which is consistent with a prima facie case, but nevertheless would tend to destroy the cause of action, the 'new matter' must be affirmatively pleaded as a special defense.' " (Citations omitted.) *Bernier* v. *National Fence Co.*, 176 Conn. 622, 629, 410 A.2d 1007 (1979).

A.2d 204 (1991). In the absence of impleading a third party based on a claim of negligence, the defendant cannot attempt to prove that another nonnegligent party is responsible. In *Bradford* v. *Herzig*, 33 Conn. App. 714, 724, 638 A.2d 608, cert. denied, 229 Conn. 920, 642 A.2d 1212 (1994), this court stated that "[i]t is axiomatic that where the negligence of two persons concurs to produce a single result, a plaintiff can elect to sue either or both. . . . The plaintiff had the right to choose either or both of two defendants to sue. If the defendant believed that a nonparty was responsible for some or all of the plaintiff's injuries, it was his responsibility to implead that nonparty." (Citations omitted; internal quotation marks omitted.) Since the defendant makes no claim that negligence on the part of Ashmead was the cause of the plaintiff's condition, the defendant cannot attempt to reduce his own responsibility for the foreseeable consequences of his negligence. The trial court, accordingly, did not abuse its discretion in granting the motion in limine, thereby excluding evidence relating to a subsequent physician's treatment.

Although the focus of the appeal extensively attacks the trial court's decision as failure to admit evidence under the *Pawlinski* standard, we conclude that the court reached the proper decision, notwithstanding its basis for granting the motion as a failure to implead Ashmead or to plead a special defense. "We may affirm a trial court's decision that reaches the right result, albeit for the wrong reason." *State* v. *Albert*, 50 Conn. App. 715, 728, 719 A.2d 1183 (1998), aff'd, 252 Conn. 795, 750 A.2d 1037 (2000).[2] We conclude, therefore, that

---

[2] An "injured plaintiff who has exercised reasonable care in the selection of a physician is not responsible for his unskillful treatment of the case, but may recover from him who is responsible for his primary injury, the damages accruing through an aggravation of the injury by the acts of the physician." *Wright* v. *Blakeslee*, 102 Conn. 162, 167, 128 A. 113 (1925). "The test of good faith and reasonable conduct must be applied under all the conditions surrounding the plaintiff at the time." *Morro* v. *Brockett*, 109 Conn. 87, 92–93, 145 A. 659 (1929). The evidence proffered by the defendant

the court did not abuse its discretion in granting the motion to exclude evidence of a subsequent physician's treatment.

## II

The defendant next claims that the court improperly refused to instruct the jury on intervening cause. We are not persuaded.

The court provided the following instruction to the jury: "If you find there exists different possibilities as to the cause of the plaintiff's injury, then you may find the evidence relative to the cause of the plaintiff's injury is too conjectural or uncertain to determine if the defendant's actions were a substantial factor in causing it. If that is the case, you should find in favor of [the defendant]."[3] The defendant contends that this instruction on causation was inadequate.

"Our standard of review on this claim is whether it is reasonably probable that the jury was misled. . . . The test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Therefore, jury instructions need not be exhaustive, perfect,

concerning Ashmead's subsequent treatment of the plaintiff in order to disprove causation by the defendant of the plaintiff's injuries did not relate to good faith or reasonableness on the part of the plaintiff in soliciting Ashmead's services. As such, the "evidence was not relevant, and admission of it would serve only to confuse the jury with additional information." *State* v. *Guess*, 44 Conn. App. 790, 811, 692 A.2d 849 (1997), aff'd, 244 Conn. 761, 715 A.2d 643 (1998).

[3] The defendant requested that the jury instruction state in part that "[i]n order to prevail in a malpractice case, the plaintiff must establish by a preponderance of the evidence a causal connection between the alleged malpractice and the plaintiff's injuries. In other words, if the plaintiff has failed to establish by the greater weight of the better evidence a causal connection between the alleged negligence of the defendant and the claimed injuries, then there can be no recovery for the plaintiff."

or technically accurate. Nonetheless, the trial court must correctly adapt the law to the case in question and must provide the jury with sufficient guidance in reaching a correct verdict." (Internal quotation marks omitted.) *Marshall* v. *O'Keefe*, 55 Conn. App. 801, 804–805, 740 A.2d 909 (1999), cert. denied, 252 Conn. 918, 744 A.2d 438 (2000).

As we stated in part I of this opinion, the court correctly excluded expert testimony placing Ashmead in the chain of causation. Therefore, the court's subsequent refusal to instruct the jury on intervening causation was correct in law, adapted to the issues and sufficient for the jury's guidance. See *Cross* v. *Huttenlocher*, 185 Conn. 390, 394, 440 A.2d 952 (1981).

### III

The defendant's final claim is that the court improperly failed to direct a verdict in his favor or to set aside the jury's verdict for the plaintiff. The defendant argues that because the plaintiff's expert witness was not sufficiently familiar with the procedure to establish the requisite standard of care for a medical malpractice action, the defendant's motion to direct or to set aside the verdict should have been granted. We disagree.

"Our review of a trial court's decision denying a motion for a directed verdict, or refusing to set aside a verdict . . . requires us to consider the evidence in the light most favorable to the prevailing party, according particular weight to the congruence of the judgment of the trial judge and the jury, who saw the witnesses and heard their testimony . . . . The verdict will be set aside and judgment directed only if we find that the jury could not reasonably and legally have reached their conclusion. . . . A jury verdict should not be disturbed unless it is against [the weight of the] evidence or its manifest injustice is so plain as to justify the belief that the jury or some of its members were

influenced by ignorance, prejudice, corruption or partiality. . . . [T]he evidence must be given the most favorable construction in support of the verdict of which it is reasonably capable." (Citations omitted; internal quotation marks omitted.) *Fink* v. *Golenbock*, 238 Conn. 183, 207–208, 680 A.2d 1243 (1996).

The defendant argues that the testimony of Sava, the plaintiff's expert witness, was inadequate to establish the applicable duty of care and the subsequent breach of that duty of care. It is unclear from the record whether there was an actual difference between the procedures for carpal tunnel release surgery used by Sava and the defendant or whether the defendant's surgical notes were sufficiently vague to preclude a conclusion from Sava that the same or similar procedures were used.[4]

Sava testified that "[m]y opinion is that the standard of care, the operative word is care, and that an injury with consequent significant deficit is an unacceptable consequence of the surgery." His basis for that standard of care was that "the surgery, as I've described it, and that which is explained in detail in the literature, does not—is not one which has an appreciable index of risk. And it's because of the anatomy of the region, and I think—not to sound reiterative, but I think I said initially, this is not a big deal operation. I mean this is fairly straightforward. It's not exploratory. The goal is to decompress the median nerve with no harm to the median nerve, and anything beyond that—Now, I'm talking about the straightforward carpal tunnel syndrome."

Sava concluded that the standard of care was breached because of the result; because of the "lacera-

---

[4] On direct examination of Sava, after describing the defendant's notes from surgery on the plaintiff, Sava stated, "[w]ell, with all due respect, I had difficulty discerning exactly what was described here."

tion which was demonstrated at the attempt at reconstruction, the formation of the neuroma, and the ultimate atrophic changes in the thenar eminence with the weakness attendant thereto"; and because "you have to have a high suspicion of a potential complication, injury." When asked what he would have done if a patient complained of postoperative numbness, he replied that a physician with a high suspicion of median nerve injury would reexplore and that if the physician did not reexplore within forty-eight hours, then "you may as well forget it."

"[T]o prevail in a medical malpractice action, the plaintiff must prove (1) the requisite standard of care for treatment, (2) a deviation from that standard of care, and (3) a causal connection between the deviation and the claimed injury. . . . Generally, expert testimony is required to establish both the standard of care to which the defendant is held and the breach of that standard." (Internal quotation marks omitted.) *Stowe* v. *McHugh*, 46 Conn. App. 391, 397, 699 A.2d 279, cert. denied, 243 Conn. 932, 701 A.2d 662 (1997). "The fact that the plaintiff's operation was followed by an injury is not sufficient to establish negligence." *Mozzer* v. *Bush*, 11 Conn. App. 434, 438 n.4, 527 A.2d 727 (1987).

The defendant relies on *Mozzer* and argues that the result in that case controls our decision. In *Mozzer*, the plaintiff claimed malpractice for personal injuries that she had allegedly sustained as a result of the negligence of two defendant physicians who purportedly had not properly positioned her right arm during gallbladder surgery, resulting in nerve damage to her arm. This court sustained the trial court's granting of a directed verdict in favor of the defendants, finding that "the plaintiff [had] presented no evidence as to what occurred during the surgical procedure and completely failed to identify any specific act of negligence on the part of any person." Id. In the present case, the plaintiff

met his burden of proving what transpired during the surgical procedure performed by the defendant and the subsequent follow-up visits with the defendant. *Mozzer* is thus distinguishable from this case and does not control its outcome.

Reviewing the evidence in the construction most favorable to sustaining the verdict, the jury reasonably could have concluded that the standard of care for carpal tunnel surgery required no damage to the median nerve, and that the plaintiff's expert testimony interpreting the defendant's surgical notes and the subsequent follow-up treatment supported the conclusion that the defendant had breached that standard of care and caused the plaintiff's injuries. Although the defendant's expert testimony conflicted with that of the plaintiff's expert witness, "the jury is free to accept or reject each expert's opinion in whole or in part." (Internal quotation marks omitted.) *Shelnitz* v. *Greenberg*, 200 Conn. 58, 68, 509 A.2d 1023 (1986). On the basis of the foregoing, we conclude that the court properly denied the defendant's motion for a directed verdict or to set aside the jury's verdict.

The judgment is affirmed.

In this opinion the other judges concurred.