******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

NICOLE DINAPOLI *v.* STEVEN REGENSTEIN ET AL.
(AC 38576)

Lavine, Mullins and Pellegrino, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendant dentist, R, and his dental practice for, inter alia, dental malpractice in connection with a teeth whitening procedure that R had performed on the plaintiff. The matter was tried to a jury, which returned a verdict in favor of the defendants. From the judgment rendered thereon, the plaintiff appealed to this court. She claimed, inter alia, that the trial court improperly excluded certain portions of the testimony of her expert witness, M, relating to the standard of care. *Held*:

1. The trial court did not abuse its discretion in striking certain portions of M's testimony, as the testimony was either irrelevant or not responsive to the questions posed by counsel; the portions of M's testimony that did not pertain to how he treats patients who want to undergo the same teeth whitening procedure as the plaintiff did here were not relevant because they did not make the defendants' alleged breach of the standard of care in treating the plaintiff more or less probable, and the portions of M's testimony in which he explained the reasoning behind the explanations he gave to his patients were not responsive because the answers went beyond the scope of the specific questions posed by the plaintiff's counsel.

2. The plaintiff could not prevail on her claim that the trial court improperly precluded her from presenting testimony regarding the facts that formed the basis of the opinion of M, who stated on direct examination that the sources he had reviewed to form his opinion were found on the Internet from people who had issues with and complaints about the same teeth whitening procedure, but was precluded from summarizing those comments and complaints; because the comments and complaints themselves were inadmissible hearsay, testimony summarizing their contents would have been admissible only for the limited purpose of explaining the basis on which M had formed his expert opinion, and the trial court did not abuse its discretion in precluding M from testifying on that point, as the plaintiff failed to show that comments posted on the Internet and complaints made with a federal agency by unknown individuals were the types of sources on which experts in the dental field reasonably rely when rendering expert opinions.

3. The trial court did not abuse its discretion by precluding the plaintiff from questioning the defendants' expert, K, on cross-examination about certain materials received from a company associated with the teeth whitening product used on the plaintiff that he had reviewed to form his expert opinion, the questions having concerned matters outside the scope of direct examination; moreover, although experts are permitted to testify about the materials on which they rely in forming their opinions, it was not an abuse of discretion for the trial court to sustain the defendants' objection to certain cross-examination of K where the plaintiff's counsel did not ask K to explain the content of the sources on which he relied, but, rather, asked him to state whether he thought those sources were factually accurate.

4. The plaintiff's claim that the trial court abused its discretion by failing to permit M to answer a hypothetical question posed by her counsel was unavailing; the hypothetical question posed by the plaintiff's counsel failed to present the facts in such a manner as to bear a true relationship to the evidence presented at trial, and, therefore, the defendants' objection to it was properly sustained by the court.

Argued March 16—officially released August 15, 2017

*Procedural History*

Action to recover damages for, inter alia, dental malpractice, brought to the Superior Court in the judicial district of Fairfield, where the court, *Radcliffe, J.*,

granted the plaintiff's motion to cite in Novsam-Regenstein, P.C., as a party defendant; thereafter, the complaint was withdrawn as to the defendant Discus Dental, LLC, et al.; subsequently, the matter was tried to the jury before *Hon. William B. Rush*, judge trial referee; verdict and judgment for the named defendant et al., from which the plaintiff appealed to this court. *Affirmed.*

*G. Oliver Koppell*, pro hac vice, with whom was *Richard T. Meehan, Jr.*, for the appellant (plaintiff).

*Beverly Knapp Anderson*, with whom was *Craig A. Fontaine*, for the appellees (named defendant et al.).

*Opinion*

LAVINE, J. The plaintiff, Nicole DiNapoli, appeals from the judgment, rendered after a jury trial, in favor of the defendants, Steven Regenstein, a dentist, and his practice, Novsam-Regenstein, P.C., doing business as Westport Esthetic Dental Group.[1] The plaintiff claims that the trial court abused its discretion by (1) striking four portions of the testimony of her expert witness regarding the standard of care, (2) precluding her from presenting testimony regarding the facts that the experts relied on in forming their opinions, and (3) precluding her expert from giving his opinion in response to a hypothetical question. We affirm the judgment of the trial court.[2]

The following facts and procedural history are necessary to our resolution of the plaintiff's appeal. On June 2, 2011, the plaintiff, a then thirty-one year old woman, went to Westport Esthetic Dental Group for a full cleaning, X-rays, and a consultation regarding "Zoom!" teeth whitening (Zoom). Zoom is a teeth whitening procedure in which a dentist applies a gel to a patient's teeth and puts a bright light in close proximity to the patient's mouth for three fifteen minute periods. When the plaintiff arrived, she filled out an intake form, indicating that she had a history of bleeding gums, acid reflux, anxiety, headaches, and tooth sensitivity. While cleaning the plaintiff's teeth, a dental hygienist and the plaintiff spoke "at length" about her history of tooth sensitivity, including that her teeth were "very sensitive" to the use of certain whitening strips. Afterward, Regenstein examined the plaintiff's teeth, and they "went over almost the exact information" that she and the hygienist spoke about, talking a "good amount" about her history of sensitive teeth. The plaintiff did not inform Regenstein that she had a history of "extreme sensitivity to bleach." Either Regenstein or the hygienist suggested to the plaintiff that she use fluoride rinse, Sensodyne toothpaste, and Motrin prior to the Zoom whitening procedure in order to alleviate any sensitivity and pain she may feel during or after the procedure. After the consultation, the plaintiff made an appointment to undergo the procedure on June 22, 2011, but she did not receive or sign a consent form explaining the known risks associated with Zoom whitening.

On June 22, 2011, the plaintiff returned to Westport Esthetic Dental Group to undergo the Zoom whitening procedure. During the second exposure to the bright light, she began to experience aching in her mouth, and during the third exposure, she experienced "extreme pain." Later that day, the plaintiff called the Westport Esthetic Dental Group because she was in "excruciating pain" and was told that she could take Motrin, use relief gel, and rinse with fluoride to relieve the pain. Her pain did not subside, and she as well as members of her family continued to call Westport Esthetic Dental

Group. On June 29, 2011, the plaintiff spoke with Regenstein, and he prescribed her fluoride gel and fluoride toothpaste. As recommended, the plaintiff brushed with the fluoride toothpaste, rinsed with fluoride rinse, wore fluoride molds, used relief gel, and gargled with warm water and baking soda for the next couple of months. She continued to experience pain and tooth sensitivity in her mouth for four years, however, and, during that time, she suffered from hair loss for six months.

On March 11, 2015, the plaintiff filed an amended complaint, alleging (1) dental malpractice arising from the defendants' breach of the standard of care prior to, during, and after administering the Zoom whitening treatment, and (2) lack of informed consent and failure to warn arising from the defendants' failure to warn her of the known risks associated with Zoom whitening[3] or the defendants' failure to recommend alternative treatment options. She alleged that, as a direct and proximate result of the defendants' actions, she suffered from and will continue to suffer from increased tooth sensitivity, incurred expenses for medical treatment, hair loss, ongoing physical pain, and anxiety.

A number of witnesses testified during the plaintiff's case-in-chief, including the plaintiff and Regenstein. She also called Andrew Mogelof, a dentist at Mogelof Dental Group, as an expert witness. The defendants, in turn, presented the testimony of Peter Katz, a dentist in private practice, as an expert witness. On direct examination, the plaintiff's counsel asked Mogelof a number of questions pertaining to the standard of care that dentists should follow when treating new patients for Zoom whitening. The defendants' counsel objected to four lines of questioning, and the court sustained the objections. The plaintiff's counsel then asked Mogelof a hypothetical question regarding breach of the standard of care. In addition, the plaintiff's counsel questioned Mogelof and Katz about the facts on which they relied in forming their opinions. The defendants' counsel objected to both lines of questioning, and the court sustained the objections.

Mogelof did testify as to the standard of care in 2011 for consulting and treating patients for Zoom whitening. He also testified that, in his expert opinion, the defendants breached the standard of care prior to and after treating the plaintiff and that they failed to inform her of the known risks associated with Zoom whitening before obtaining her consent. Notably, Mogelof never testified, in any way, that the Zoom whitening or any subsequent treatment caused the plaintiff's injuries. See footnote 14 of this opinion.

On October 6, 2015, the jury found that the defendants had not breached the standard of care in treating the plaintiff, but found that they had failed to obtain the plaintiff's informed consent. It rendered a verdict in

favor of the defendants, however, because it found that their failure to obtain her informed consent was not the proximate cause of her injuries. This appeal followed. Additional facts will be set forth as needed.

As a threshold matter, we set forth the standard of review for all of the plaintiff's claims, which all concern the court's evidentiary rulings. "The decision to preclude a party from introducing expert testimony is within the discretion of the trial court." (Internal quotation marks omitted.) *Amsden* v. *Fischer*, 62 Conn. App. 323, 325–26, 771 A.2d 233 (2001). "We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Internal quotation marks omitted.) *Maynard* v. *Sena*, 158 Conn. App. 509, 513–14, 125 A.3d 541, cert. denied, 319 Conn. 910, 123 A.3d 436 (2015).

I

The plaintiff's first claim is that the court abused its discretion by striking four portions of Mogelof's testimony relating to the standard of care. She argues that the excluded testimony was necessary to her dental malpractice claim because the testimony was relevant to establishing the standard of care and "would have enabled the jury to find that the defendants departed from the standard of care . . . ." We disagree.

During the plaintiff's direct examination of Mogelof, her counsel asked: "[W]hat do you do with respect— let's take a patient who is not a prior patient of the office. What is your practice?" During his lengthy explanation,[4] the plaintiff's counsel interrupted him and asked if he could "confine [his testimony] only to patients seeking Zoom." The defendants' counsel objected and moved to strike Mogelof's testimony because his answer was not confined to patients seeking Zoom whitening treatment. The court sustained the objection, thereby striking the testimony.

Then, the plaintiff's counsel asked Mogelof: "What is the conversation you have with them . . . only with respect to the person coming in and saying they want Zoom." While Mogelof was giving a lengthy answer to the question,[5] the defendants' counsel objected because it was a "narrative response," and the court sustained the objection.

The plaintiff's counsel also asked Mogelof: "What . . . do you specifically tell them about the Zoom process, if anything?" During his answer,[6] Mogelof stated: "In addition, we know, dentists know, anybody that uses Zoom knows—." The defendants' counsel objected and moved to strike that sentence, and the court sustained the objection, thereby striking the testimony.

Finally, the plaintiff's counsel asked Mogelof: "So let's confine [this to] what you tell patients, no[t] why you tell them but what you tell them." During his answer,[7] he stated: "In addition, I also tell them that sometimes patients may have sensitivity of their teeth as a result of Zoom because that's what the experience is and that's what [Discus Dental, a company associated with Zoom whitening] has informed all of us who use Zoom." The defendants' counsel objected and moved to strike his testimony about what "the Discus company did at any point in time," and the court sustained the objection, thereby striking the testimony.

"Evidence is admissible only if it is relevant. . . . Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . It is well settled that questions of relevance are committed to the sound discretion of the trial court." (Internal quotation marks omitted.) *Pickel* v. *Automated Waste Disposal, Inc.*, 65 Conn. App. 176, 184, 782 A.2d 231 (2001). In addition, testimony that is not responsive to a question is inadmissible. See *State* v. *Ankerman*, 81 Conn. App. 503, 516–17, 840 A.2d 1182 (no abuse of discretion in sustaining prosecutor's objection because defendant's answer not responsive to question posed), cert. denied, 270 Conn. 901, 853 A.2d 520, cert. denied, 543 U.S. 944, 125 S. Ct. 372, 160 L. Ed. 2d 256 (2004).

On the basis of our review of the record, we conclude that the court did not abuse its discretion in striking certain portions of Mogelof's wide ranging testimony because that testimony was either irrelevant or not responsive to the questions posed by the plaintiff's counsel. The court did not abuse its discretion by concluding that the portions of Mogelof's testimony that did not pertain to how he treats patients who want to undergo Zoom whitening were irrelevant because they did not make the defendants' alleged breach of the standard of care in treating the plaintiff for Zoom whitening more or less probable. In addition, it was not an abuse of discretion to exclude portions of Mogelof's testimony that were not responsive because the answers went beyond the scope of the specific questions posed by the plaintiff's counsel.

II

The plaintiff's second claim is that the court abused its discretion when it excluded another portion of Mogelof's testimony and two portions of Katz' testimony that regarded the facts on which they had based their expert opinions. She argues that the jury did not find that the defendants departed from the standard of care in her dental malpractice claim, in part, because

"[Mogelof] . . . was not allowed to support his opinion," and she was "deprived of an opportunity to fully examine the veracity of the process in which [Katz] reached his expert opinion . . . ." We disagree.

### A

### Mogelof's Testimony

During the plaintiff's direct examination of Mogelof, her counsel asked him what sources he "reviewed" before testifying. Mogelof said that he reviewed "comments I found on the web [from people] who were having issues with going through the Zoom process" and "complaints that were listed with the [Food and Drug Administration] . . . ." When he attempted to give a summary of the comments and complaints, the defendants' counsel objected on the grounds of hearsay and relevance. The plaintiff's counsel argued that Mogelof's testimony was admissible because "an expert can testify with respect to matters that might otherwise be considered hearsay if they have assisted the expert in . . . forming his expert opinion." The court sustained the objection.[8]

"An out-of-court statement used to prove the truth of the matter asserted is hearsay and is generally inadmissible unless an exception applies." (Internal quotation marks omitted.) *State* v. *Owen*, 101 Conn. App. 40, 42, 919 A.2d 1049, cert. denied, 283 Conn. 902, 926 A.2d 671 (2007). However, "[a]n expert may base his opinion on facts or data not in evidence, *provided they are of a type reasonably relied on by experts in the particular field.* . . . [W]hen the expert witness has consulted numerous sources, and uses that information, together with his own professional knowledge and experience, to arrive at his opinion, that opinion is regarded as evidence in its own right and not as hearsay in disguise." (Citations omitted; emphasis added; internal quotation marks omitted.) *In re Barbara J.*, 215 Conn. 31, 43, 574 A.2d 203 (1990). "Whether inadmissible facts are of a type customarily relied on by experts in forming opinions is a preliminary question to be decided by the trial court." Conn. Code Evid. 7-4 (b), commentary.

In giving his or her opinion, an "expert must, of course, be allowed to disclose to the trier of fact the basis facts for his [or her] opinion, as otherwise the opinion is left unsupported in midair with little if any means for evaluating its correctness . . . ." (Internal quotation marks omitted.) *Carusillo* v. *Associated Women's Health Specialists, P.C.*, 72 Conn. App. 75, 88, 804 A.2d 960, quoting C. McCormick, Evidence (3d Ed. 1984) § 324.2, p. 910. "[O]ur appellate courts have construed [Conn. Code Evid. § 7-4] to permit the admission of otherwise inadmissible hearsay evidence for the limited purpose of explaining the factual basis for the expert's opinion. . . . [I]nformation on which an expert relied that is not offered for its truth but is

offered to show that the expert relied on it is not hearsay and may be the subject of proper cross-examination to test the basis of that expert's opinion." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *R.T. Vanderbilt Co., Inc.* v. *Hartford Accident & Indemnity Co.*, 171 Conn. App. 61, 287–88, 156 A.3d. 534 (2017), *petitions for cert. filed* (Conn. May 15, 2017) (Nos. 160445, 160446), *cross petition for cert. filed* (Conn. June 26, 2017) (No. 160509). It is at the discretion of the court to decide whether the sources an expert relied on should be admitted and subjected to cross-examination. See id. 289–90 (no abuse of discretion in court admitting information on which expert relied in forming opinion and allowing opposing party to test reliability of information through cross-examination).

We conclude that the court did not abuse its discretion in sustaining the defendants' objection. The comments and complaints themselves were inadmissible hearsay, and, therefore, testimony summarizing their contents would have been admissible only for the limited purpose of explaining the basis on which Mogelof formed his expert opinion. We find no abuse of discretion in the court's decision to preclude Mogelof from testifying on this point because the plaintiff failed to show that comments posted on the Internet and complaints made to the Food and Drug Administration by unknown individuals were the types of sources on which experts in the dental field reasonably rely when rendering expert opinions.

B

Katz' Testimony

The plaintiff further claims that the trial court abused its discretion by precluding her from asking Katz about materials that he had reviewed for purposes of forming his expert opinion. Specifically, she claims that the trial court improperly precluded her inquiry into Katz' reliance on (1) certain documents from Discus Dental, and (2) two of the plaintiff's exhibits. We disagree.

1

During the defendants' direct examination of Katz, the defendants' counsel asked him about the materials he reviewed before testifying. Katz listed a number of sources that he had reviewed,[9] but he did not state that he reviewed any documents from Discus Dental, or that he received any documents from Discus Dental. During the plaintiff's cross-examination of Katz, her counsel asked: "You testified, Dr. Katz, that you had received certain materials from Zoom, from Discus Dental . . . . Is that correct, you got some documents from them, right?" The defendants' counsel objected on the ground that the question was outside the scope of direct examination and irrelevant. The court sustained the objection.

"It is a well established rule of evidence that cross-

examination is restricted to matters covered on direct examination. . . . A question [on cross-examination] is within the scope of the direct examination if it is designed to rebut, impeach, modify, or explain any of the defendants' direct testimony. . . . The trial court is given broad discretion to determine whether a particular line of cross-examination is within the scope of the direct examination." (Citations omitted; internal quotation marks omitted.) *State* v. *Ramos*, 261 Conn. 156, 176–77, 801 A.2d 788 (2002), overruled on other grounds by *State* v. *Elson*, 311 Conn. 726, 740, 91 A.3d 862 (2014).

We conclude that the court did not abuse its discretion in sustaining the defendants' objection. Katz did not testify during direct examination that he reviewed any documents from Zoom or Discus Dental or that he received documents from Discus Dental. Thus, the court did not abuse its discretion in concluding that the question was outside the scope of the direct examination.

2

During the plaintiff's cross-examination of Katz, he stated that he relied, in part, on two of the plaintiff's exhibits in forming his expert opinion: a dental assistant's notes dated June 22, 2011,[10] and an instructional form for dentists on how to administer Zoom whitening.[11] The plaintiff's counsel asked Katz: "And did you, in coming to your opinion that the standard of care was not violated by Dr. Regenstein in his response to the problems that are set forth here, you considered all of these facts as stated in the record?" After Katz stated yes, the plaintiff's counsel then asked him: "In coming to your opinion that Dr. [Regenstein] did not violate the standard of care, did you take these facts as true?" The defendants' counsel objected on multiple grounds, including that the plaintiff's counsel was "making a closing argument" because she was asking Katz to opine on the "[v]eracity of [the] evidence," the question was "inappropriate," and that the question was "not within the scope of direct examination . . . ." The court sustained the objection.[12]

"As a rule, the extent of a cross-examination is within the court's discretion, although it should be liberally allowed. . . . Nonetheless, the court may restrict a cross-examination to evidence which is competent, material, and relevant, and when the examination has been carried as far as will serve to develop the issues involved and aid the search for the truth, we approve of the trial court curtailing the length and the limit of examinations." (Internal quotation marks omitted.) *State* v. *Ballas*, 180 Conn. 662, 676, 433 A.2d 989 (1980).

We conclude that the court did not abuse its discretion in sustaining the objection by the defendants' counsel. Although we are cognizant of the fact that experts

are permitted to testify about the materials on which they rely in forming expert opinions; see *Carusillo* v. *Associated Women's Health Specialists, P.C.*, supra, 72 Conn. App. 88; the plaintiff's counsel did not ask Katz to explain the content of the sources, but, rather, the plaintiff's counsel asked him to state whether he thought those sources were factually accurate. It is difficult to imagine an expert conceding that he or she relied upon an unreliable source in rendering an opinion. In any event, although another judge might have handled this evidentiary issue differently, we are not persuaded that the court abused its discretion in limiting the plaintiff's cross-examination of Katz.

### III

The plaintiff's third claim is that the court abused its discretion in not permitting Mogelof to answer a hypothetical question posed by the plaintiff's counsel. She argues that the jury did not find that the defendants breached the standard of care in her dental malpractice claim, in part, because the hypothetical was "her opportunity to present to the jury her claim that the defendants had deviated from the applicable standard of care," and its exclusion forced the jury to "disregard Dr. Mogelof's expert testimony . . . ." We disagree.

During the plaintiff's direct examination of Mogelof, her counsel asked him to answer the following hypothetical: "A patient has a known history of sensitivity . . . informs the dentist that she has clenching and grinding, that she suffers from migraines, that she suffers from anxiety, that she has acid reflux, and informs the dentist that she has very sensitive teeth and she had an uncomfortable experience in the past using bleaching trays and she came to the dentist for tooth whitening, and *the dentist went ahead with that procedure without conducting further history into her— further examination into her history of sensitivity*, did not provide her with an informed consent form, did not warn her about usage of contraindicated medication, and *did not warn her of the potential for exacerbated sensitivity and pain due to the procedure.* Could you say on this hypothetical within a reasonable degree of medical certainty that the standard of care for a dentist in 2011 would be violated?" (Emphasis added.) The defendants' counsel objected on the ground that certain facts in the hypothetical were not supported by the evidence, specifically, that "the dentist went ahead with that procedure without conducting . . . further examination into her history of sensitivity," and the dentist "did not warn her of the potential for exacerbated sensitivity and pain due to the procedure." The court sustained the objection.

"[A]n expert may testify in the form of an opinion and give reasons therefor, provided sufficient facts are shown as the foundation for the expert's opinion. . . . [A]n expert may obtain information at trial by having

factual testimony summarized in the form of a hypothetical question at trial." (Citations omitted; internal quotation marks omitted.) *Viera* v. *Cohen*, 283 Conn. 412, 444, 927 A.2d 843 (2007). "An expert may give an opinion in response to a hypothetical question provided that the hypothetical question (1) *presents the facts in such a manner that they bear a true and fair relationship to each other and to the evidence in the case*, (2) is not worded so as to mislead or confuse the jury, and (3) is not so lacking in the essential facts as to be without value in the decision of the case. A hypothetical question need not contain all of the facts in evidence." (Emphasis added.) Conn. Code Evid. § 7-4 (c); see also *State* v. *David N.J.*, 301 Conn. 122, 133–34, 19 A.3d 646 (2011).

On the basis of our review of the record, we conclude that the court did not abuse its discretion in sustaining the defendants' objection. First, the court did not abuse its discretion in concluding that the phrase, "the dentist went ahead with that procedure without conducting . . . further examination into [the patient's] history of sensitivity," did not bear a true relationship to the evidence presented at trial. Regenstein testified that, during the June 2, 2011 consultation, he and the plaintiff discussed her medical history, specifically, her history of suffering from sensitive teeth, and he conducted an oral examination of her mouth in order to determine the cause of her sensitivity. The plaintiff testified that they "talked about the sensitivity in [her] teeth . . . a good amount" with both Regenstein and the dental hygienist during the June 2, 2011 consultation.

Second, the court did not abuse its discretion in concluding that the phrase "[the dentist] did not warn [the patient] of the potential for exacerbated sensitivity and pain due to the procedure" did not bear a true relationship to the evidence presented at trial. Regenstein testified that, at the June 2, 2011 consultation, he and the plaintiff discussed how she should expect to experience sensitivity after the procedure because she had a history of sensitive teeth. He also testified that they had a detailed discussion about how to lessen the sensitivity that she would feel, which included taking Motrin, using fluoride rinse, and using Sensodyne toothpaste in a tray[13] during the weeks prior to the procedure. Although the plaintiff testified that no one told her that Zoom whitening was a painful procedure or that she should use the trays, she also testified that either Regenstein or a dental hygienist explained to her that she could brush her teeth with Sensodyne toothpaste and take Motrin prior to the procedure in order to "alleviate any pain" that she may feel. The court, therefore, properly sustained the objection.[14]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The amended complaint also named Discus Dental, LLC, Philips Oral

Healthcare, Inc., and Philips Electronics North America Corporation as defendants. On September 8, 2015, the plaintiff withdrew the action against them and, therefore, in this opinion we refer to Regenstein and Westport Esthetic Dental Group individually by name and collectively as the defendants.

[2] The plaintiff also claims that the court abused its discretion by precluding her from introducing into evidence the medical records of Gail Whitman, the plaintiff's dermatologist, concerning the plaintiff's hair loss. She argues that the evidence was relevant to prove that she suffered from anxiety and emotional distress as a result of the treatment at issue, and "[t]his exclusion severely prejudiced the plaintiff's ability to establish a *claim for damages* . . . ." (Emphasis added.) In support of her argument, the plaintiff stated in her rely brief to this court that she "did not seek to have the records . . . introduced as expert evidence that showed there was causation with respect to the . . . procedure and accompanying hair loss. Rather, the plaintiff sought to have Dr. Whitman's records admitted as evidence that [she] suffered great anxiety about the loss of her hair due to the . . . treatment." In light of our conclusion that the court did not abuse its discretion in its evidentiary rulings regarding expert testimony, the question of damages is not relevant, and, thus, we need not address this claim.

[3] The plaintiff alleged in her amended complaint that the known risks of Zoom whitening included that "Zoom whitening is contraindicated for patients using Accutane," and that "Zoom whitening is not recommended for patients with sensitive teeth or that Zoom whitening may increase [teeth] sensitivity." She did not specifically allege that the defendants knew or reasonably should have known about the known risks.

[4] The following is an excerpt of Mogelof's stricken testimony in response to the question: "And let's take the patient coming in and seeing the dental hygienist as a first visit. Patient usually has various treatments provided, full mouth series of X-rays would be taken, if appropriate, and a very thorough examination by me or my son, a doctor's exam. If there's medical information or dental history information, usually forms are filled out by the patient. . . . And once the patient is in the office and has filled out all [of] the forms, usually if there is any information on the forms, for instance, in the medical history, that are concerning to us in any way, I will come into the treatment room and I will introduce myself to the patient and review a couple of those items if they're concerning or questionable to me. If not, then the patient will have—usually have a cleaning, and, as I said, they would have a full set of X-rays. And the hygienist would then perform her examination and take her detailed information, which would include an oral cancer screening exam . . . . They may take photographs of the patient's teeth with an intraoral . . . camera, which we have. So those images are loaded into the patient file. If there's a particular concern that the patient brings up about a problem they're having, then that problem is examined and documented by the hygienist to report to me when I come back into the room for an examination."

[5] Mogelof gave the following stricken testimony in response to the question: "The conversation is, if there are any things in their dental history or their dental information or their medical form that they filled out that relate to the Zoom process, then I need to go into that in more depth. . . . [F]or instance, if a patient says that they have extreme dry mouth and it's on the basis of a medication that they are taking, then I have to determine whether or not, if they have a dry mouth, what influence is a dry mouth on using a Zoom product. If they say that they are taking—they have a hip problem and they are taking noninflammatory medication, noninflammatory medications, I have to determine whether or not those medications, whatever they are, have any influence of the Zoom process because the Zoom company Discus has provided information to us regarding a list of [medications] that may render the patient—may create a problem with the patient if they go through the Zoom process. So let's say that the patient has taken a medication that I feel—."

[6] Mogelof gave the following testimony in response to the question: "Specifically, I tell them about the Zoom process itself. I describe the steps in the process. I describe the importance of using various materials that are recommended by the Zoom company. And I tell the patient that this process involves materials that are applied to the teeth. And they're applied to the teeth by having the teeth isolated away from the rest of the lips and the tongue and the cheeks of the mouth so that just the teeth are exposed. And the material that's placed on the teeth that's part of the Zoom process is an agent or a material that will, through the process of the use of a light

that activates the material, will cause teeth to whiten. And the stains or colors of the teeth will hopefully be whitened. I say hopefully because every patient may have a different result from Zoom. And people need to know that. *In addition, we know, dentists know, anybody that uses Zoom knows—*.” (Emphasis added.)

[7] Mogelof gave the following testimony in response to the plaintiff's question: “So I tell them that Zoom may not whiten their teeth as much as they want. I tell them that it is a process of about two and a half hours in the office, during which time their mouth is prepared for and isolated for the Zoom process. We have some photographs that we show the patient, what the apparatus looks like, so they have an understanding of what they're going to have in their mouth. In addition, I also tell them that sometimes patients may have sensitivity of their teeth as a result of Zoom because that's what the experience is *and that's what the Discus company has informed all of us who use Zoom*.” (Emphasis added.)

[8] The court stated in response to the argument of the plaintiff's counsel: “In certain case[s] that's true, but just because he read something on the web doesn't mean it's [true] in this one.”

[9] Specifically, Katz stated that he reviewed “[t]he complaint, the revised complaint, the depositions of the plaintiff, the defendant, and Dr. Mogelof, the other expert witness, dental records of Dr. Regenstein, [and] Dr. Diette. There were medical records from the skin doctor, her primary care physician, her neurologist, [and] some [pharmacy] records on medications.”

[10] Regenstein testified that the notes were written by Jennifer Schreier, a dental assistant in the office. The notes were broken up into two parts. The first part referred to the notes taken immediately after the procedure, and the second referred to the notes taken immediately after the plaintiff called the office. The first part read as follows: “6/22/11: Begin Zoom starting [value] lower arch D2, max arch posteriors A1—[patient] has veneers/crown 6-11 tried in [patient's] trays—[previously] done at another DDS, max tray does not fit properly—[advised] need for new tray—offered to take [impression]—[patient] not concerned [with] color of max teeth. ‘Does not have a wide smile and can't see that far back.’ [Patient] very concerned about [sensitivity]—used Sensodyne 2 [weeks] prior to today—[dispensed] 800 mg Motrin prior to Zoom. Completed 2 full cycles and 2 [minutes] into 3rd cycle—[experienced] [too] many zingers and is very uncomfortable—wanted to stop. [Advised] may [experience] Zingers for next 24 [hours]. [Advised] [r]elief gel, Sensodyne, ACT Rinse and Motrin.” The second part read as follows: “6/22/11: [Patient] called—‘I have so much discomfort, I can't even open my mouth. I'm ready to leave work.’ [Advised] to stay [with] Motrin/ Advil every 6 [hours]—[Patient] states she took 600 mg 1 [hour] ago. [Advised] to utilize the relief gel as well as ACT Rinse and also to continue use of Sensodyne. [Advised] may be uncomfortable for next 24 hours. Per [patient] ‘there is no way I can.’ ”

[11] The plaintiff's counsel did not indicate which sections of the form he was referencing.

[12] The court did not indicate upon which ground or grounds it sustained the objection.

[13] Regenstein testified that a tray is similar to a mouth guard, in which a patient puts toothpaste and puts the tray in his or her mouth for one-half an hour.

[14] As an alternative basis to affirm the judgment, on the basis of our review of the record, we agree with the defendants and conclude that, even if the court abused its discretion, any errors were harmless because the plaintiff failed to prove causation for her medical malpractice claim.

“[T]o prevail in a medical malpractice action, the plaintiff must prove (1) the requisite standard of care for treatment, (2) a deviation from that standard of care, and (3) *a causal connection between the deviation and the claimed injury*. . . . Generally, expert testimony is required to establish both the standard of care to which the defendant is held and the breach of that standard.” (Emphasis added; internal quotation marks omitted.) *Gold* v. *Greenwich Hospital Assn.*, 262 Conn. 248, 254–55, 811 A.2d 1266 (2002). “[T]he causal relation between an injury and its later physical effects may be established by the direct opinion of a physician, by his deduction by the process of eliminating causes other than the traumatic agency, or by his opinion based upon a hypothetical question. . . . [T]he expert opinion must be based on reasonable probabilities. . . . An expert, however, need not use talismanic words to show reasonable probability.” (Citations omitted; internal quotation marks omitted.) *Shegog* v. *Zabrecky*, 36 Conn. App. 737, 746, 654 A.2d 771, cert. denied, 232 Conn. 922, 656 A.2d 670 (1995).

The plaintiff was required to provide expert testimony to prove causation in her malpractice claim. See id., 746–47 (explaining three exceptions to rule requiring expert testimony to prove causation). First, the effects that Zoom whitening may have on a patient with sensitive teeth are not obvious. See *Sherman* v. *Bristol Hospital, Inc.*, 79 Conn. App. 78, 89, 828 A.2d 1260 (2003) (effect morphine may have on patient with heart condition not obvious). Second, the evidence presented at trial did not create a probability that was so strong that a lay juror could form a reasonable belief that the plaintiff's injuries were caused by the Zoom whitening procedure. See *Shegog* v. *Zabrecky*, supra, 36 Conn. App. 747. Although the plaintiff testified that her teeth sensitivity had significantly increased after the Zoom whitening procedure, she also testified that she suffered from sensitivity prior to the procedure and that she suffered from other ailments prior to the procedure, such as teeth grinding. Third, and finally, we do not believe that the present case involves gross negligence. Cf. *Puro* v. *Henry*, 188 Conn. 301, 307–308, 449 A.2d 176 (1982) (gross negligence when needle found in patient after hernia operation). Thus, expert testimony was required to prove causation for her dental malpractice claim.

Mogelof was the only expert who testified for the plaintiff. Although we are mindful that "talismanic words" are not required to prove causation; (internal quotation marks omitted) *Shegog* v. *Zabrecky*, supra, 36 Conn. App. 746; Mogelof's testimony failed to support an argument for causation. Mogelof testified that, in his expert opinion, the defendants had breached the standard of care when treating the plaintiff and had failed to properly inform her of the known risks associated with Zoom whitening before obtaining her consent. The plaintiff's counsel, however, never asked him to opine on the issue of causation. Mogelof did not testify, on the basis of a reasonable medical probability, that there was a causal relation between the plaintiff's injuries and the Zoom whitening. In fact, Mogelof testified on cross-examination that he could not say without speculating that the plaintiff's upper teeth sensitivity was related to the Zoom whitening. He also never gave an opinion, through the process of elimination, on whether other factors, apart from the Zoom whitening, could have caused her injuries. Finally, he did not give his opinion through a hypothetical question because the plaintiff's counsel never asked him a hypothetical question pertaining to the issue of causation.

We need not determine whether the plaintiff proved causation for her lack of informed consent claim because, even if the court abused its discretion in its evidentiary rulings, the jury still found that the defendants' failure was not the proximate cause of her injuries.

---